HENRY L. EINSTEIN

*v.*

LOUIS ROSENFELD and THE BOUND BROOK WOOLEN MILLS.

</div>

Complainant and defendant are the owners in equal shares of all the stock of a manufacturing corporation. They disagreed as to the proper valuation of the stock on hand January 1st, 1884, in making up their annual statement,

complainant insisting that it should be taken at its market value, which is less than cost, and defendant that it should be taken at cost. The complainant, since January 1st, 1884, appears to have assumed control of the company's business, to have carried it on, and to have excluded the defendant therefrom.— *Held*, that the condition of the property and the relations of the parties thereto, were not such as to justify this court's interference, and the appointment of a receiver for the corporation, and the issuing of an injunction to prevent the defendants proceeding at law, by *mandamus*, to have the principle on which the stock should be valued established and also his right to an inspection of the books &c.

Bill for relief. On motion to dissolve injunction and cross-motion for the appointment of a receiver. On bill and answer and affidavits annexed.

*Mr. A. P. Whitehead* (of New York) and *Mr. C. Parker*, for Einstein.

*Mr. R. V. Lindabury* and *Mr. T. N. McCarter*, for Rosenfeld.

THE CHANCELLOR.

The bill is filed to restrain the defendant Rosenfeld, who, with Einstein, the complainant, owns (in equal shares between them) all the capital stock of the Bound Brook Woolen Mills, a corporation under the laws of this state, from prosecuting an application to the supreme court of this state for a *mandamus* to compel Einstein either to unite with him in taking an account of the stock in trade and plant of the company as of the 1st day of January, 1884, at the cost price, or to allow Rosenfeld to have access to the stock and plant and the books and papers of the company to do it himself; and to allow him at all times free and uninterrupted access to all the books, papers, accounts, mills, offices and other properties of the company in his, Einstein's, possession or under his control; and to permit Rosenfeld to have at all times an equal share and control with himself in the management and direction of all the affairs and business of the corporation. The bill also prays that a receiver of the company may be appointed, and that Rosenfeld may be required to bring

to the office of the company at Bound Brook all the books and papers of the company now in his possession or under his control in the city of New York or elsewhere. As has been stated, Einstein and Rosenfeld together own all the stock of the company in equal shares. They disagree with each other mainly, it seems, about the method of taking the account of stock of the corporation on hand at the end of the year 1883, Einstein insisting that it shall be taken at its market value, which is less than cost, and Rosenfeld insisting that it shall be taken at cost.

The bill treats the relations of the parties to each other, in regard to their interests in the company, as those of copartners. It alleges that Einstein and Rosenfeld are antagonistic to each other in the transaction of the business of the company, pulling different ways—one opposing what the other proposes; that while the law requires that there shall be three directors, there are only two, and a third cannot be elected because a director must be a stockholder, and neither of the parties can, under the terms of an agreement between them, sell his stock without first offering it to the other, and Rosenfeld will not buy Einstein's stock and will not sell his own except at a price beyond its value. The bill alleges that in prosecuting the *mandamus* Rosenfeld is actuated only by improper motives, a disposition to annoy Einstein, and that in taking the testimony to be used on the hearing of the application for that writ, an exposure of the business of the company to its rivals in trade will be made, to the prejudice of both parties.

The company is a corporation, duly established under the laws of this state. Its existence is, according to its certificate, to terminate in 1930. The general jurisdiction of equity over corporate bodies does not, in the absence of express statutory authority, extend to the power of dissolving the corporation or of winding up its affairs and sequestrating the corporate effects and property ; and courts of equity will not, ordinarily, by virtue of their general equitable jurisdiction or of their visitorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from the hands of its own officers and entrust it to the control of a receiver of the court,

upon the application either of creditors or shareholders. It is urged, however, that in this case the corporation was but a mere form which the partners gave to what was in fact only a co-partnership, and that this court is therefore at liberty to treat and deal with it as a copartnership. The bill alleges that the corporation is a *quasi* partnership. It appears by the answer that a partnership was at first agreed upon between the parties, but it was afterwards agreed between them to form a corporation instead. It is entirely clear that the court, in dealing with the subject, must treat the company as a corporation, and it can-not, in order to acquire jurisdiction over it to dissolve it, disregard and ignore its form and character. It is argued, however, that, admitting that it is a corporation, this court has, under the circumstances, jurisdiction over it to dissolve it. The circum-stance relied upon is the existence of a disagreement between the two parties who own all the capital stock in equal shares, by reason of which disagreement the corporation is deprived of a lawful governing body. The cases cited are *Featherstone* v. *Cooke, L. R. (16 Eq.) 298*, and *Trade Auxiliary Co.* v. *Vickers, Id. 303*. In those cases, the companies were joint stock com-panies, and the principle was observed that equity will only in-terfere in the internal affairs of such companies where the com-pany has no properly constituted governing body, or where there are such dissensions in the governing body that it is im-possible to carry on the business with advantage to the parties interested, and that in such cases the interference will be only for a limited time and to as small an extent as possible.

In the case in hand, the business of the company is being car-ried on. The complainant appears to have assumed full control of it, and seems even to have excluded the defendant therefrom, and the latter has submitted to such assumption and exclusion. There is therefore no need of immediate interference on the part of this court for the protection of the property or business inter-ests of the company. The principal subject of disagreement is the valuation of the stock on hand at the end of 1883, and Rosenfeld's proceedings in *mandamus* are designed to settle that question by a judicial determination. He has a clear and indu-

bitable right to have recourse to the courts for that purpose. Those proceedings do not appear to have been undertaken through any disposition to annoy the complainant, but in a *bona fide* endeavor to obtain a decision of the question. He seems to be seeking a legal remedy in a legitimate way. Nor does the suggestion that by those proceedings the business of the company will be revealed to rivals, constitute any reason for interfering with the suit.

The complainant invokes the aid of this court on still another ground—the statutory one of the insolvency of the company. The bill evidently was not filed with that aspect, or with a view to obtaining relief on that ground. But however that may be, the statements of the bill are not sufficient to warrant judicial action on the ground of the insolvency of the corporation. There is no averment that the company is insolvent or has suspended business. It is, however, insisted that the conclusion that the company is insolvent can be deduced from the statement of the valuations put upon the property of the company in the bill. But those valuations are mere estimates made by the complainant, and are entitled to no weight in establishing the fact of the insolvency of the company, especially seeing that he offered, since the disagreement began, to pay Rosenfeld par for his stock, and asked forty cents on the dollar ($15,000) for his own. Moreover, he not only does not allege that the company is insolvent, but in stating the difficulties of the situation he guardedly says that by reason of those difficulties there " may be danger of insolvency." The injunction will be dissolved and the motion for a receiver denied, with costs.