JENNIE R. MORSE

*v.*

METROPOLITAN STEAMSHIP COMPANY et al.

[Decided February 13th, 1917.]

1. It is within the power of a court of equity to appoint a receiver for a corporation not insolvent:

(*a*) Whenever, because of gross abuse of trust, or dissension among the members of the board of directors or the stockholders, or the absence of a properly constituted board of directors, or because the company has failed of its purpose, there is a necessity for judicial intervention, a court of equity may under its general powers appoint a receiver and grant such other relief as may be necessary.

(*b*) A court of equity may, if it appears that the business of a solvent corporation cannot continue to be properly conducted by reason of the fact that no proper competent board of directors can ever be elected (as for instance. if the stock must continue in control of those convicted of gross fraud in the management), under its general equity powers actually wind up the business and distribute the assets.

2. A majority of the stockholders, no matter how large, has no right to divert to themselves assets of the company to the detriment of creditors and other stockholders.

3. When they fraudulently attempt to do so they become to all intents and purposes trustees.

4. The acts done by a majority of the stockholders in this case create a situation where the appointment of a receiver, on petition of the minority stockholders, is proper.

5. No stay of appointment of a receiver in the interest of the stockholders should be granted where there was evidence that the purpose of applying for it was to commence proceedings in another state to deprive this court of jurisdiction.

On bill, &c.

*Mr. English* (*Mr. Littleton, Mr. Swacker* and *Mr. Brown,* of the New York bar), for the complainant.

*Mr. Frederic J. Faulks* and *Mr. Ward,* for the defendants.

*Mr. Wickersham* (of the New York bar), for a creditor.

LANE, V. C. (orally).

I announced yesterday that I would appoint a receiver at once, owing to what I consider to be the exigencies of the occasion. It is now stated that appeal will be taken to the court of errors and appeals, and, as there may be a necessity for an early application to that court for *ad interim* relief, I will announce my conclusions on the law at this time. Counsel for the defendant corporation has made application for a stay of the operation of the order or interlocutory decree and the application has been argued as if the order had actually been signed. I am going to deny the application, for the same reasons which induced me to act at once yesterday induce me now to refuse to practically nullify the action I then took.

The case was fully argued and I have examined the authorities cited. I will not attempt to analyze them to any great extent. The power of a court of equity to appoint a receiver of a corporation, not insolvent under certain circumstances, has been before the courts of this state in several cases, and I think is clearly settled. In *Benedict* v. *Columbus Construction Co., 49 N. J. Eq. 23,* the chancellor, while holding that the court cannot dissolve a corporation or declare its franchises forfeited and extinguished except under statutory provisions, yet said that "but where it plainly appears that the object for which the company was formed is impossible of attainment, it becomes the duty of the company's agents to put an end to its operations and wind up its affairs, and should they, even though supported by a majority of the stockholders, pursue operations which *must* evidently be ruinous, any shareholder feeling aggrieved would, upon plain equitable principle, be entitled to the assistance of this court, and a decree should be made compelling the directors to wind up the company's business and distribute its assets among those who are entitled to them unless they can lawfully be used for other business purposes allowed by the charter. This course is pursued in case of partnerships in similar situation and for the reasons there controlling I perceive no reason why it should not also be pursued in the case of corporations." He also said: "If stockholders in a corporation disapprove of a company's management which is conducted without fraud or by action *ultra*

*vires,* or in gross abuse of trust, or shall consider their speculation a bad one, their remedy is to elect new officers or sell their shares and withdraw." In *Einstein* v. *Rosenfeld, 38 N. J. Eq. 309,* the chancellor, while not doubting his power to appoint a receiver, did not do so under the circumstances of that case. In *Avery* v. *Bless Manufacturing Co. et al., 27 N. J. Eq. 412,* the chancellor, upon a bill filed for relief against fraudulent acts of a board of directors alleged to be unlawful, did appoint a receiver. He said: "The property must be preserved pending this litigation, and the conduct of the president and his associates in the direction has been such that they cannot be permitted to retain control of the affairs of the company." This is precisely the situation I find exists here. In *Kean* v. *Colt, 5 N. J. Eq. 365,* the chancellor, while declining under the circumstances of that case to appoint a receiver, yet did not doubt his power. In *Laurel Springs Land Co.* v. *Fougeray, 50 N. J. Eq. 756,* the court of errors and appeals, reversing Vice-Chancellor Pitney, who had appointed a receiver, said: "The frauds of these defendants as directors of this corporation are all capable of adequate remedy and complete redress by the court within the principles of remedial and preventive equity. This being so, the court was not justified in a decree of first instance in stopping the business of a solvent company and taking possession of its affairs for the mere purpose of aiding the withdrawal of the injured party with a proportionate share of the corporate property and its increment, assuming such jurisdiction to exist in any case in the first instance." I direct attention to the language used by the court in that case, to wit, where the wrongs are capable of *adequate* remedy and *complete* redress. In *Sternberg* v. *Wolff, 56 N. J. Eq. 396,* the court of errors and appeals was careful to say that that court, in *Fougeray* v. *Cord, 50 N. J. Eq. 185, 756,* did not deny the power of the court of chancery to appoint a receiver *pendente lite* for the management of the affairs of an incorporated company organized for the purposes of trade. It said: "The ruling of this court was that 'the disturbance of corporate functions incident to a receivership are extreme powers, and may not be decreed by a court of equity when the specific acts complained of are capable of redress and complete restitu-

tion, and those apprehended fall within the ordinary jurisdiction by injunction.'" In the last case the court cited with approval *Edison* v. *Edison United Phonograph Co.,* 52 N. J. Eq. (at *p. 620*), in which case Vice-Chancellor Van Fleet had said: "The power of this court to appoint a receiver of a corporation, either because it has no properly-constituted governing body, or because there are dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled, but I think it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully-constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation and proceed in the proper discharge of its duties, the court must lift its hand and retire." I do not find all the circumstances under which the court may intervene have ever been definitely determined. In the nature of things they could not be. I do not find that the courts of this state have in anywise limited the general doctrine which prevails in England and throughout this country that whenever because of gross abuse of trust, because of dissension among the members of the board of directors or the stockholders, because there is no properly-constituted board, or because the company has failed of its purpose, there is a necessity for judicial intervention a court of equity may intervene under its general jurisdiction and appoint a receiver and grant such other relief as may be necessary. The text-book authorities are to the effect that the power exists, but that, of course, it must be exercised with discretion. *5 Thomp. Corp. 6826; Beach Rec.* § *424; 2 Mach. Corp.* § *1161; Clark & Mar. Corp.* § *556; High Rec.* (*4th ed.*) § *288.*

I will refer to only two of the cases from other jurisdictions cited by counsel for the complainant, because the facts are almost similar to those in the case at bar. *Dupuy* v. *Transportation*

*Company* (*Court of Appeals of Maryland*), *33 Atl. Rep. 889;* *Miner* v. *Belle Isle Ice Co.* (*Supreme Court of Michigan*), *53 N. W. Rep. 218.* In the latter case the court held that because it would be impossible to elect a proper board of directors, for the reason that the control of the majority of the stock was in the persons who had been convicted of gross fraud, the court would under its general equity power appoint a receiver and wind up the affairs of the corporation.

In the case of *United States Ship Building Co.* v. *Conklin* (*Circuit Court of Appeals, Third Circuit*), *126 Fed. Rep. 132,* where the bill was filed alleging insolvency produced by gross mismanagement of the directors and the appointment had been made under the statute of New Jersey, the court said: "Upon the whole, we are of opinion the bill presented a case of which the circuit court sitting in equity had jurisdiction, and that the appointment of a receiver was within the authority of the court." The court struck out of the decree the provision that the appointment was under the statute and substituted therefor the words, "the receiver to be subject at all times to the orders and directions of this court," and added to the end of the order the following provision: "The foregoing order to stand until the further order of the court."

That a majority of the stockholders of a corporation, no matter how large, has no right to divert to themselves assets of the company to the detriment of its creditors and stockholders is, of course, settled. *Kean* v. *Johnson, 9 N. J. Eq. 401; Black* v. *Delaware and Raritan Canal Co., 24 N. J. Eq. 456; Siegman* v. *Electric Vehicle Co., 72 N. J. Eq. 403; Lillard* v. *Oil, Paint and Drug Co., 70 N. J. Eq. 197.* In the latter case, Vice-Chancellor Emery pointed out that, although the majority of the stock of a company may vote, and vote as self-interest dictates, and that under ordinary circumstances the relation of trustee and *cestui que trust* does not exist, and the ordinary rules in respect to trusts is not to be applied, yet such power is not unlimited and the majority of the shareholders, although they may deal with the assets of the company, cannot so deal with them as to divide the assets more or less between themselves to the exclusion of the minority. I think that when the majority of the stockholders of

a company do act fraudulently and do attempt to divert the assets of the company to themselves to the exclusion either of a minority of the stockholders or the creditors, for all practical purposes they become trustees.    Vice-Chancellor Emery, again, in the case of *Colgate* v. *United States Leather Co., 73 N. J. Eq. 72*, after examining the authorities, said: "The general rule under our decisions is, that the individual stockholders are not trustees for each other, but each may, as a member of the general corporate body, exercise his individual right and vote equally with other stockholders on the ratification of a contract in which he is interested, and ratification or adoption of the contract is valid even though carried by his vote. * * * The right of the majority (statutory or other) either to originally direct or to affirm contracts or other proceedings in which the directors or the majority stockholders are interested is not, however, absolute, but is subject to the necessary qualification that the majority, although they may deal with the assets of the company, cannot so deal with them as to divide these assets more or less between themselves to the exclusion of the minority."

Whether this court can or will at some future time in this present suit make a decree which will have the effect of substantially winding up the corporation, dividing its assets among its creditors and stockholders, it is not now necessary to decide. What I hold at this time is that the court has power, under the circumstances, if there is no other complete and adequate remedy, to appoint a receiver for the purposes contemplated by the order I am about to advise.

I am willing to say that if it were necessary to sustain the jurisdiction of this court upon the present bill I would, as presently advised, hold that this court may, if the circumstances indicate that the corporation cannot properly be conducted by reason of the fact that no competent, proper board of directors can ever be elected, under its general equity power, actually wind up the corporation and divide its assets.

The question, then, is, whether the court should exercise this drastic power. I am firmly convinced that there is no way by which the court can give the complainants the relief to which I think they are entitled, which will be complete and adequate

under the case of *Fougeray* v. *Cord,* except by the appointment of a receiver. The circumstances in this case and in that are different. In the present case, the fraud which was practiced was contemplated prior to the incorporation of the company; it was the design before the company was formed to divert to the majority of the stock, in the guise of creditors, sufficient at least of the assets of the company to repay to the majority of the stock that which that majority paid for its interest in the corporation both as creditors and stockholders. The remaining creditors and the stockholders who had received their interest in the company as a part of a reorganization scheme, must have contemplated from the very terms of the plan that the company was to actually operate the freight boats and the Harvard and Yale, the only assets. The majority of the stock contemplated that the company should completely, or practically, at least, abandon its business, sell its freight boats and wharves in the interest of the majority and send the Harvard and Yale to the Pacific coast. The scheme was carried out, and by the latter part of 1910, after the corporation had been in existence for less than a year, its business was practically discontinued. In this case we have a situation where the fraud was contemplated prior to incorporation, and has been consistently carried down to the present time. During all this period the corporation has been in the control of directors who had no financial interest and who were, and still are, the dummies of Edward D. Robbins. The court is now asked to permit these directors to remain in control of this company pending the institution of litigation which should be brought and the investigation which should be made of its affairs. It is suggested that the court may direct the directors to aid and assist the complainants in bringing such a suit and that the books and papers of the company may be made available. I cannot conceive that the court can by the power of injunction grant any adequate relief. The history of this case shows to what extent the complainants or anyone investigating the affairs of the company can expect assistance from the directors. Weeks have been spent in the trial. No information was given to the complainants, who were stockholders and creditors; each bit of information had to be drawn out piece by piece;

enormous expense has, undoubtedly, been put upon the corporation in defending this suit in the interest of Robbins. All of this would have been unnecessary if a frank disclosure of what had been done had been made in the beginning. It is not a case where there is a real dispute as to the facts or as to what actually took place. I can conceive, of course, the directors opposing this suit to the uttermost of their power if there was a substantial dispute as to what had been done. The court could have immediately, upon the disclosure of the facts, determined under the law whether they amounted to fraud. What the defendants did was to have put the complainants to as much trouble as possible in getting at practically admitted facts. I do not consider that directors who have acted in this way are in any position to ask me to permit them to remain in charge. I draw no distinction between the present directors, who were elected last year, and those who preceded them; they are all dummies and all take their orders from Chase or Robbins. None of the assets are in this state, nor are any of the present directors residents of this state, or parties to this suit; there are none subject to the jurisdiction of this court except only as they may be directors of the Metropolitan Steamship Company. Pending this suit the directors who were parties have been supplanted by three others, non-residents. If this company was an operating concern, whose business might be hurt by the appointment of a receiver, there would be, of course, a further argument against any hasty action by this court. It is not. Its only function at the present time is to receive the rentals from the Harvard and Yale, which are under a five-year lease on the Pacific coast, and pay such debts as may incidentally accrue. There is no discretion to be exercised. The directors have effectively foreclosed themselves from exercising any discretion. Whatever the directors of this company might do can as well be done by a receiver. It is stated that the appointment of a receiver may result in a foreclosure of the first mortgage. An order to show cause was made upon all parties interested, returnable here, and a large proportion of the first mortgage bondholders approved the appointment of a receiver. None appeared opposing. The self-interest of the bondholders would, I think, prevent them

from foreclosing. In any event, balancing the possibilities of such a foreclosure with, to· my mind, the certainty of denying adequate and complete relief without the appointment of a receiver, I have come to the conclusion to appoint a receiver.

The court was asked by one of the creditors represented by Mr. Wickersham to delay the appointment of a receiver until certain negotiations, which counsel say have been brought to his attention and which are said to be in progress in New York, are completed. These negotiations are said to be for a settlement of the controversy, a reorganization of the company, or something of that nature. Reading between the lines, and considering the testimony of Mr. Reid, I am of the opinion that since the conclusions on the facts in this case were handed down there have been attempts made to obtain a settlement. Mr. Reid testifies that these attempts went so far that Mr. Galen Stone, of Boston, threatened him in New York a few days ago that a receivership here would get them nothing, because a plan already was in contemplation to appoint a receiver in California at the instance of second mortgage bondholders. Part of this issue, at least, I have held ought not to have been made. It was stated by Mr. Stone that Mr. Robbins no longer owned the second mortgage bonds; this, undoubtedly, was for the purpose of indicating that no relief that could be given by this court would be effective because the bonds had gotten into the hands of *bona fide* holders for value. The fact that these negotiations are pending, that such threats have been made (no application was made to me to permit the examination of Mr. Stone to refute the testimony of Mr. Reid), is an indication of the necessity of an immediate action by this court. There are parties involved who have not. appeared, stockholders and creditors, and no settlement between the parties to this litigation, under the circumstances, should be made except under the eye of the court. The last hold that this court had upon the corporation consisted of the fact that prior to the last year it had a New Jersey director. Last year this director was supplanted by a person resident without the state and an entire set of new directors were elected, so that whatever hold this court had upon them as parties to the suit went. The only opposition to the appointment of a receiver

comes from the corporation itself, and, inasmuch as I have held that the corporation is governed by Robbins, that opposition must be assumed to come from Robbins and is in his interest. In view of this fact I do not think that very much weight should be given to it. Now, with respect to the application for a stay, precisely the same reasons which influence me now to appoint a receiver influences me to deny the stay. There has been no assurance given to the court that the statement of Mr. Reid that Mr. Stone made the threat is untrue, or that the plan he spoke of was not in contemplation. I assume counsel is not to be expected to make any such assurance. If I should grant a stay, proceedings may be taken in courts of other jurisdictions and before this court or the court of errors and appeals could act much harm may be done. On the other hand, I can see no harm that can come to the corporation at this time by permitting the receiver to go into possession. It is only by the appointment of a receiver that I can protect the creditors and stockholders. To merely permit the injunctions to remain in force is not sufficient. I cannot enforce them if violated. The corporation is not operating; its business will not be disturbed; the only thing that the receiver will do will be to go into actual physical possession of the property; that means simply the money and the books; he is not to interfere with the operation of the Harvard and Yale, and I am at a loss to imagine any possible injury that can be done. With respect to the expense, the receiver will, of course, keep in close touch with the court, and I can as well control this during the interim before the court of errors and appeals will act without a stay as with one. I do not intend, of course, if there is an appeal taken, to have investigations started that are going to cost thousands of dollars, or suit commenced that may lead to interminable litigation and to a great deal of expense before the action of the court of errors and appeals. I think that the complainants should, and I direct them to, do everything in their power to facilitate a hearing and determination of this case by the court of errors and appeals.