In the matter of the dissolution of NEW JERSEY
REFRIGERATING COMPANY.

[Argued June 29th, 1923. Decided November 19th. 1923.]

1. Under section 31 of the Corporation act (*Comp. Stat. p. 1619*),
where there is unanimous consent in writing of the stockholders to
the dissolution of a corporation, such dissolution is effective at latest
upon the filing of such unanimous written consent with the secretary
of state and the issue of a certificate of dissolution by him, and there-
upon the jurisdiction conferred on the court of chancery by section
56 of the act (*Comp. Stat. p. 1636*) attaches.

2. The court of chancery under its general equity powers may ap-
point a receiver of a corporation, even though solvent, in cases where
there is a present danger to the interests of the stockholders con-
sisting of a serious suspension of, of interference with, the conduct of
the business and a threatened or actual depreciation of the value of
the assets consequent thereton. Such power should be exercised with
caution, and its exercise should not be continued longer than neces-
sary to preserve the property and protect the interests of the stock-
solders.

On appeals from an order advised by Vice-Chancellor
Church, which reads in part as follows:

"And it further appearing to the court that all of the
stockholders of said corporation have consented to a disso-
lution of said corporation and that said consent has been
duly filed in the office of the secretary of state and the cer-
tificate of the secretary of state of the dissolution of said
corporation has been duly issued and that since or on about
the twenty-third day of May the directors of said corporation
as trustees on dissolution have been attempting to liquidate
the business of said corporation in accordance with the pro-
visions of the statute in such case made and provided and
the complainant and the Betz interest urging that this court
take over the administration of the dissolution proceedings
of said corporation and appoint receivers and the said Albert
C. Wall and Hudspeth and Demarest and J. Fisher Ander-
son for their respective interests, urging that this court by
order continue the directors as trustees on dissolution, and it

further appearing to the court by, the proceedings herein and by the statement of counsel and of the trustees personally present in open court that since the proceedings taken in dissolution and since the directors have been acting as trustees upon dissolution, dissensions have arisen among the directors with respect to the manner in which the liquidation should be conducted to such an extent as that the directors are not functioning as trustees; and it further appearing to the court that by reason of the complexity of the business of said corporation and of the divers interests represented upon its board of directors and of the dissensions which have already arisen between the trustees that the directors as trustees cannot function with due regard to the interests of the stockholders of the company and a majority of the trustees, either personally or through counsel, expressing the opinion that the directors cannot so function and it further appearing to the court that the business of the company is of such a nature and the liquidation must necessarily be of such a nature as that the directors as trustees could not safely properly function without the aid and assistance of orders of this court, which would necessitate continuous applications to this court for relief which would tend to the injury of the interest of the stockholders; and it further appearing to the court upon the whole case that the interests of the stockholders of the company require that this court take control of the liquidation of the affairs of said corporation and that the control so taken be exercised through receivers.

"It is on this 13th day of June, 1923, ordered, that this court take over the administration of the liquidation of the affairs of the New Jersey Refrigerating Company.

"And it is further ordered, that Edward H. Wright and Frank J. Bock be and they are hereby appointed receivers of the New Jersey Refrigerating Company, with full and complete power to collect the debts and property due and belonging to the corporation and to prosecute and defend in the name of the corporation or otherwise all suits necessary or proper for the purposes aforesaid and to appoint an agent or agents under them and to do all other acts which might

be done by such corporation, if in being, that may be necessary for the final settlement of its unfinished business."

(The order also contained other provisions relative to the powers of the receivers, which are omitted either as not involved in this appeal, or already disposed of by interlocutory motions in this court.)

*Mr. Elmer W. Demarest,* for the appellants Emma Lembeck et al.

*Mr. Albert C. Wall,* for the appellant Otto A. Lembeck.

*Mr. J. Henry Harrison,* for the respondents' receivers.

*Mr. Merritt Lane,* for the respondent Sarah E. Lembeck.

*Mr. George J. Carr* (of the New York bar), for the trustee and respondent, G. Arthur Betz.

The opinion of the court was delivered by

PARKER, J.

The present appeal is the culmination of an acrimonious controversy between various stockholding interests in the New Jersey Refrigerating Company, a corporation of this state. That company acquired the plant and other property of a large brewing concern in Hudson county, which had ceased operations on account of the prohibition laws, and conducted the plant as a cold storage plant. The brewing concern had owned a large number of scattered pieces of real estate in New Jersey and elsewhere, utilized by it for saloon purposes, but naturally useless to its successor. Dissensions as to management of the business arose among the stockholders, whose respective interests were, for the most part, considerable, the corporation being a close one and the stock held almost entirely in two families. There was a contested election of directors in May, 1922, which was reviewed under the statute (*Comp. Stat p. 1624 § 42*)

and set aside by the supreme court; and while the matter was under consideration in that court the business was operated by trustees under the direction of the court of chancery. The decision of the supreme court was appealed to this court, and the appeal, as well as four other suits directly or indirectly involving control of the company, were pending when, in February, 1923, an agreement of compromise between the conflicting parties was drawn, but apparently not signed, and there was a dispute as to whether it had been agreed to by parol. On April 27th, 1923, another agreement was drafted at a meeting in the office of counsel representing some of the parties, other counsel being present. Some of the parties and some of the counsel signed this. Others seem to have withheld their signature. We need not examine the effect of this in a legal sense; it is mentioned as one of the important incidents in a rather extended chain of negotiation and recrimination. An important feature of it was a stipulation that the company should be voluntarily dissolved and liquidated, its debts paid and its remaining assets divided among the stockholders; and that such action should be taken "by either unanimous consent of all the stockholders, all persons present agreeing to sign such consents, or by two-thirds stockholders' vote at a special stockholders' meeting, all persons present agreeing to vote in favor thereof." This, it will be observed, is the alternative procedure provided by section 31 of the Corporation act. *Comp. Stat. p. 1619.* The agreement further provided for the election of a named board of directors at the forthcoming annual election; that such board should elect designated individuals to the respective offices; the amount of their salaries; certain amendments to the by-laws; the disposition of outstanding litigations, and certain other details. Particularly it was provided that the stated annual meeting should be adjourned to the date of the special stockholders' meeting, to be called to consider the question of dissolution. The elections were had accordingly, but contemporaneously with them an agreement of dissolution conforming to the statute was executed by all the stockholders and filed May

24th, 1923, in the office of the secretary of state, who issued the "certificate of dissolution" mentioned in the act. Publication of this was begun on May 31st, but had not been completed when the proceeding now under review was inaugurated by the filing, on June 11th, of a petition by Sarah Lembeck holding two hundred and thirty-five shares of stock, praying the appointment of a receiver or receivers. The vice-chancellor, on the return of an order to show cause, and after hearing all parties desiring to be heard, made the order appointing receivers which is reproduced in part above. It is attacked on this appeal on two principal grounds.

I. That the court of chancery had no jurisdiction under section 56 of the Corporation act (*Comp. Stat p. 1636*), because the corporation, at the time of making the order, had not been "dissolved" in the sense intended in the act, *i. e.,* its proceeding for voluntary dissolution was not complete.

II. That a case had not been made out, either giving the court of chancery jurisdiction to deal with the matter under its general equity powers, or, if jurisdiction existed, warranting the exercise of those powers in the manner adopted by the court.

We conclude that the appointment of receivers should be affirmed on both grounds.

I. As to the statute. Mention has been made of an alternative procedure for voluntary dissolution. Where there is a two-thirds interest favorable to dissolution, but not unanimity, the successive steps in the procedure under section 31 are—(1) resolution of the directors, upon notice, recommending dissolution and calling a stockholders' meeting; (2) notice of adoption of the resolution and of the proposed meeting, to be advertised four weeks and mailed to stockholders; (3) holding of the stockholders' meeting and a consent in writing thereat of two-thirds in interest of all the stockholders, to be filed with the secretary of state, together with a list of officers and directors; (4) certificate by the secretary of state "that such consent has been filed;" (5) publication of such certificate for four weeks successively in a

newspaper in the county; (6) filing of an affidavit of such publication. "And upon the filing" (says the act) "in the office of the secretary of state of an affidavit that said certificate has been so published, the corporation shall be dissolved, and the board shall proceed to settle up and adjust its business and affairs." By the express language of the act the dissolution takes place upon the filing of this last affidavit in cases where the two-thirds procedure, as it may be called, has been followed. And in *Hegeman* v. *Atlantic Shoe Co., 73 N. J. Eq. 295,* it was held in the court of chancery that in a case of two-thirds procedure the statutory power of appointing a receiver on dissolution conferred by section 56 did not arise until the final affidavit had been filed. *Ibid. p. 300.*

But the voluntary dissolution by a unanimous consent is a very different matter. In that aspect the language of the act is broad and general, and, as we think, free from ambiguity. Section 31, immediately following the extract just quoted, proceeds thus: "Whenever all the stockholders shall consent in writing to a dissolution no meeting or notice thereof shall be necessary; but *on filing said consent* in the office of the secretary of state *he shall forthwith issue a certificate of dissolution,* which shall be published as above provided." The form of such certificate is not prescribed in the act, but a "certificate of dissolution" must necessarily be a certificate that the corporation has been dissolved; and the plain intendment of the act seems to be that dissolution occurs either on the filing of the unanimous consent or, at latest, upon the making of the certificate by the secretary of state. To the argument that the certificate of dissolution must be published as above provided and that an intent to postpone dissolution until its last publication should be deemed to exist, we answer that no such intent is indicated in the language of the act, and that suitable public notice of the fact of dissolution being eminently proper for the benefit of creditors and others having dealings with the corporation, the provision is naturally referable to that consideration. There is no requirement, as in the two-thirds procedure, that the final advertising and affidavit thereof

shall be a condition precedent to dissolution. It follows, therefore, that in this case the filing of the unanimous consent and the issue of the certificate of dissolution thereon vested in the court of chancery the powers prescribed by section 56.

II. As to the other phase of the matter: Cases in which a court of equity has appointed a receiver of a corporation because of internal dissensions are comparatively rare, but the jurisdiction appears to be well settled. Several decisions in our own states affirm the jurisdiction and are illustrative of the situations in which a receiver should, or should not, be appointed, as the case may be.

In *Einstein v. Rosenfeld, 38 N. J. Eq. 309,* Chancellor Runyon refused a receiver in a case of dissension between stock interests because the business of the company was being carried on in the usual course, under full control of one of the contending parties.

In *Archer v. American Water Works Co., 50 N. J. Eq. 33* (at *p. 52*), Chancellor McGill said, after awarding an injunction:

"If the present directors of the company, and they are all parties to this suit, continue their dissensions, so that the affairs of the company are not speedily attended to, upon a proper application, I will care for the property, pending determination of the suit, through the instrumentality of a receiver. Such action will be supported by precedents and authority." (Citing cases.)

In *Edison v. Edison United Phonograph Co., 52 N. J. Eq. 620* (at *p. 625*), Vice-Chancellor Van Fleet said:

"The power of this court to appoint a receiver of a corporation, either because it has no properly constituted governing body or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled," and went on to say that it should be exercised with caution and only so long as necessary to preserve the property of the corporation and protect the interests of the stockholders.

In *Sternberg* v. *Wolff, 56 N. J. Eq. 555,* Vice-Chancellor Pitney reviewed the decisions and refused to appoint a receiver in a case of dissension between owners, because notwithstanding dissension and litigation the business of the corporation was being conducted in full volume, with the usual profit to the stockholders, was not being interfered with by the litigation, and no corporate action was necessary to its continuance. He said the court should not interfere with a solvent corporation by a receiver unless there is a present danger to the interests of the stockholders consisting of a serious suspension of, or interference with, the conduct of the business and a threatened depreciation of the value of the assets consequent thereon, which may be met and remedied by a receiver.

In the case at bar, most if not all the elements are present which were held in the cited decisions to be absent. The president refused to carry out the resolutions of the board; that body was unable, without a physical contest, to exclude from its meeting an unauthorized person who was officially notified to depart. The business of the corporation was halting and almost at a standstill. Perishable property deposited with it for storage was in danger. Opportunities for favorable sale of outlying properties were being ignored; and, as we have said, four or five law suits were in progress. Affairs had reached an impasse. In addition to all this, the stockholders had unanimously consented to dissolve the corporation, and such dissolution, if not perfected (as we have just held it was), was imminent, so that the carrying on of ordinary business must necessarily cease in a few days. The pleadings indicate that on this application the original dispute was rather about the personality of the receivers than a receivership at large. A plainer case for the interposition of the court of chancery could not well be imagined. The action taken was in line with that sustained by us in *Morse* v. *Metropolitan S. S. Co., 88 N. J. Eq. 325,* so far as that case deals with general equity power.

The order of the court of chancery appointing receivers will be affirmed, but the powers of the receivers thereunder should be limited to those necessary and proper for the settlement and winding up of the affairs of the corporation, the liquidation of its assets, including the sale and conveyance of its property, real and personal, payment of claims and expenses of administration, and distribution of the balance, all under the direction of the court of chancery.

*For affirmance* — THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—10.

*For reversal*—None.