This is a matter originally argued before Vice-Chancellor Berry on the return of an order to show cause why a custodial receiver should not be appointed for Worne Plastics Corporation and for such other and further relief as is prayed for in the bill. Subsequent to the original argument leave was granted to the complainants to amend their bill and the matter was then continued until June 12th, 1947. Thereafter the defendants moved to strike the bill of complaint. Upon the filing of the amended bill of complaint it was agreed that the motion to strike the bill should be deemed to be directed at the amended bill and that the order to show cause and the motion to strike the bill should be argued simultaneously. *Page 326 
Both the complainants and the defendants filed voluminous affidavits in support of their respective motions. The amended bill of complaint and the affidavits of the respective parties disclose the following set of facts:
It appears that one Howard E. Worne claims to have developed a method of producing and manufacturing acrylic resin by an electrical polymerization process. Sometime in the fall of 1946 one, I. Rogosin, became interested in this process and caused a company, Beaunit Mills, Inc., of which he was president, to invest $160,000 in Worne Plastics Corporation, a corporation of the State of Delaware, organized for the purpose of manufacturing, producing and vending acrylic resin produced under the formula of Howard E. Worne. Sometime prior to this investment by I. Rogosin the Worne Plastics Corporation had attempted to sell this stock to the public and had conducted the sale in such a manner that the Securities and Exchange Commission considered the attempt a public offering. It likewise developed that at the time of this public offering the Worne Plastics Corporation was not the owner of the improvements, fixtures, machinery and equipment to which they claimed to have title, but that another corporation, Synthetic Resins, Inc., a New Jersey corporation, was the actual owner. As a result, the Securities and Exchange Commission commenced proceedings against Worne Plastics Corporation but agreed to stop any further proceedings for an allegedly illegal offering provided that all of the stockholders who had theretofore purchased stock in that company were offered an opportunity of rescission and repayment of the money paid for the purchase of its stock. This was apparently accomplished through the funds invested by I. Rogosin. A number of individuals who had purchased stock in Worne Plastics Corporation at the public offering refused the opportunity to rescind their agreement to purchase. After the investment by I. Rogosin and in accordance with the agreement entered into with Worne Plastics Corporation prior to said purchase, a new board of directors and new officers were elected. This board of directors consisted of Z.A. Aronson, H. Gregory, N.H. Polonsky and John Platoff, who were allegedly employees, associates or agents of *Page 327 
the said I. Rogosin and the above referred to Howard E. Worne. Out of the total number of shares issued and outstanding, 39,100 are owned by the present complainants, 167,900 shares are owned by Beaunit Mills, Inc., or its nominee and an undisclosed lesser number of shares owned by other stockholders. At the time that I. Rogosin became interested in the investment in the stock of Worne Plastics Corporation it was represented to him that the formula or method developed by Howard E. Worne for the production of acrylic resin had proceeded beyond the experimental stage and that Worne Plastics Corporation, with the receipt of the additional capital so invested by him, was in a position to produce such acrylic resin on a commercial industrial basis which would show a great profit to said corporation.
Shortly after the acquisition of the stock by I. Rogosin or his nominees there developed a conflict between the Rogosin interests and the Worne interests. At no time up to the date of the filing of the bill herein was there any large scale production of acrylic resin. Howard E. Worne contends that the reason for the failure to so produce is attributable to the attitude of I. Rogosin, who insisted upon the completion of the main plant when the so-called "pilot" plant should have been first completed, and further, in the general interference by the said Rogosin with the actual conduct of the operations and business of said corporation. I. Rogosin, on the other hand, contends that the reason that no real production of acrylic resin has resulted to date is attributable to the fact that the formula or method which Howard E. Worne had developed was still in a formulative and experimental stage and that it was not feasible to so produce acrylic resin in either quantity or quality which would commercially compete with other resin producing firms. There appears from the affidavits of both the complainants and defendants a serious dispute as to whether the production method is beyond the experimental stage and whether it is presently commercially feasible. The affidavits of the defendants further disclose that on innumerable occasions they attempted to have Howard E. Worne conduct a successful production of acrylic resin at either the pilot plant or the main plant located at Pinewald, *Page 328 
New Jersey. The affidavits of complainants, on the other hand, allege that the failure to make a successful demonstration of the ability to produce acrylic resin is attributable either to the interference of I. Rogosin and his associates or to so-called "bugs" in the mechanical equipment, which were of a minor nature and could easily be cured. Matters continued in this position until sometime around May 16th, 1947, when the plant was finally closed down by the action of the majority of the board of directors for the reason, as stated by I. Rogosin, that he was convinced that no commercially acceptable acrylic resin could be produced and that he had made a bad investment. On May 19th, 1947, a special meeting of the board of directors of the Worne Plastics Corporation was held in New York City which was attended by all of the directors with the exception of Worne, but which was attended by the following stockholders, who are not directors — Mr. O. James Morelock, Mr. Herbert J. Kenarick, Mr. Worne's attorney, Mr. Appleton, one of the complainants, and Mr. Werner, one of the minority stockholders, Harry Rogosin, vice-president of the Beanuit Mills, Inc., and I. Rogosin. At this meeting it was decided to engage an independent research organization to investigate the processes, plant and the possibilities of Howard E. Worne's formula, but such an investigation was never completed. On May 21st, 1947, Z.A. Aronson, secretary of Worne Plastics Corporation, mailed notices to all of the stockholders calling a special meeting for June 25th, 1947, of said stockholders for the following purposes: (1) to consider the advisability of continuing operations and (2) to consider such other business as may properly come before the meeting. This meeting was never held but was adjourned. The complainants charge that the shutting down of the plant and the acts and conduct of I. Rogosin and the other directors, with the exception of Howard E. Worne, were capricious, arbitrary and a fraud upon the rights of the minority stockholders and that as a result thereof the plant and assets of said corporation will be liquidated at prices far below their true value and that a threatened dissolution by I. Rogosin will effect a fraud upon the stockholders in that it will be necessary to dispose of the property *Page 329 
and assets of said corporation below their actual value. In substantiation of the alleged fraudulent intent of I. Rogosin in his general conduct of affairs complainants cite two examples in addition to his general conduct of interfering with the business generally — (1) the purchase of 40,000 pounds of croton aldehyde when a purchase of 5,000 pounds would have been sufficient, and (2) a visit by one Novick, a chemist in the employ of I. Rogosin, to ascertain whether the plant owned by Worne Plastics Corporation could be used for the purpose of manufacturing textile finishes for fabrics, a business in which I. Rogosin is engaged.
Complainants further pray for the appointment of a custodial receiver and a preliminary restraint because of the impasse resulting from a dissension among the directors.
We are faced with two counter motions. In order to dispose of these matters in an orderly fashion it becomes necessary to consider the motion to strike first, so that there may be a determination whether this court has any jurisdiction and whether there remains any bill of complaint and prayer for this court to consider.
The first problem is one of jurisdiction generally. The defendants moved to strike the bill filed herein, among other reasons, on the ground that said Worne Plastics Corporation is a foreign corporation and the Court of Chancery of this state has no power to regulate the management of the affairs of a foreign corporation. It is to be noted from the allegations of the bill of complaint, which allegations are not disputed by the defendants, that the Worne Plastics Corporation, although incorporated under the laws of the State of Delaware, is licensed to do business in the State of New Jersey, has conducted practically all of its business in the State of New Jersey and has all of its assets located in the State of New Jersey. It is further to be noted that all of the individual defendants who are directors of Worne Plastics Corporation, as well as the corporation itself, are before this court and amenable to its process.
The question propounded is whether the Court of Chancery has the power and authority to appoint a receiver for a solvent foreign corporation independent of any state statute. As a *Page 330 
general rule, Courts of Chancery will not exercise jurisdiction and control over the management of the internal affairs of foreign corporations. The reasons for such a general rule are self-evident, i.e., the rights of its members are governed by the laws of the state of its incorporation and the courts of that state furnish the most appropriate forum for an adjudication upon the relationship between stockholders and the corporation, particularly since normally such courts alone possess power adequate to the enforcement of all decrees that justice may require. It is the inability of the court to do complete justice by its decree and not its incompetency to decide the question involved that determines the exercise of this power by our Court of Chancery.
In the usual Chancery suit between a stockholder and his corporation, aside from statutory proceedings, the relief prayed for is predicated upon the general equity jurisdiction of the court. The basis for such action is either upon a theory of contract or trust — contract, i.e., resulting from the charter, which is a contract between the corporation and its stockholders, and trust, resulting from a trust relationship between the officers and directors and the stockholders. As has been stated, these two theories ofttimes merge to the extent that they are not readily divisible. In Mayer v. Oxidation Products Co., Inc.,110 N.J. Eq. 141; 159 Atl. Rep. 377, where the question of jurisdiction has been very ably analyzed, the court said as follows:
"Viewed from this angle, the power of chancery to entertain a stockholder's bill is not determined by the character of the corporation, domestic or foreign. It matters not where the contract or the trust was created, which the court is asked to enforce, or where the fraud was concocted, which the court is prayed to suppress. A court of equity proceeds in personam
against wrong-doers found within its jurisdiction. The subject has been elaborately considered in connection with contracts and frauds respecting property outside the jurisdiction. Penn v.Lord Baltimore, 2 White T. 923, and notes; Lindley v.O'Reilly, 50 N.J. Law 636."
In several reported cases where the facts were comparable to the matter sub judice the court has held that Chancery has *Page 331 
the power to appoint a receiver and that the question is not one of jurisdiction but rather one of the exercise of jurisdiction.
In Hill v. Dealers Credit Corp., 102 N.J. Eq. 310;140 Atl. Rep. 569, the court said as follows:
"The theory of the cases I have quoted, and of others I have examined, but deem it unnecessary to refer to in detail, is that in a case similar to the one now under discussion the question is not one of jurisdiction; it is rather whether the court can, should it assume jurisdiction, make its decree effective. In other words, not whether it has jurisdiction, but should it in its discretion exercise the inherent jurisdiction which it possesses. Here we have a foreign corporation whose business and assets are in New Jersey and all of the directors of which are before the court. It seems to me that this court has jurisdiction under its inherent equity power to consider the appointment and continuance of a receiver."
In Mayer v. Oxidation Co., Inc., supra, the court said as follows:
"The question of jurisdiction raised by defendants is not whether jurisdiction over this litigation resides in the court of chancery or in our courts of law. If complainant cannot have relief in equity, he can have relief from no tribunal of the State of New Jersey. And this inability to obtain a judicial remedy (assuming defendants' contention is sound) results not from any defect in our law, but from a lack of power in the state itself. The extent of that power can be measured by the decisions of the courts of other states and of the United States, for the judicial authority of New Jersey is the same as that of any other state. Since I find that the courts of our sister states assume and exercise jurisdiction in cases like the present suit, I can say with much confidence that the State of New Jersey and its agency, the court of chancery, have the same jurisdiction."
Again in Mayer v. Oxidation Products Co., Inc., supra, where the facts are peculiarly parallel to the facts subjudice, the court said:
"If the right of the corporation asserted by the stockholder complainant depends upon a doubtful construction of the *Page 332 
statutes of the state where the corporation is created, this court will usually refuse jurisdiction. No such question arises in the present case. On the other hand, it appears that all the officers and directors of the defendant company are amenable to process in New Jersey and have been made parties to this suit and that all the corporate assets are here. It is more convenient for defendants as well as complainant to litigate in New Jersey rather than to be sent to Delaware to settle their disputes. In New Jersey alone could a decree for complainant be made effective. A court of Delaware, not having jurisdiction over the individuals involved, could not enforce its decree by process of contempt; and since none of the property is in that state, it could not enforce its decree by sequestration or through a receiver or other proceeding against the property. If a decree were obtained there and not voluntarily obeyed, complainant would have to resort to the courts of this state in order to enforce the Delaware decree. I conclude that this court has and should exercise jurisdiction in the present case."
It would seem, as a general proposition, that the Court of Chancery has inherent jurisdiction to appoint a receiver of a foreign corporation where, as here, its assets are located within this state, its officers and directors are amenable to process of or before the courts of this state, most of its business is conducted in this state and there is no dispute as to a doubtful foreign statute. This seems a complete answer to defendants' motion to strike on the ground of jurisdiction and their motion on this ground will be denied.
Defendants' motion is further predicated (1) upon the attempted interposition by the Court of Chancery to regulate the internal affairs of a corporation which should be left to the judgment of its duly constituted officers and directors; (2) that the allegations of fraud are insufficient; (3) the bill is insufficient in law and fact for the interposition of the Court of Chancery.
The gist of the prayers, which are eleven in number, may be reduced as follows: (1) a discovery of assets and an opportunity to examine the corporate books; (2) an accounting by the officers and directors; (3) an injunction against a *Page 333 
prospective dissolution of the corporation; (4) an appointment of a custodial receiver with power to take charge of the assets and continue the business of the corporation; (5) an injunction from interfering with Howard E. Worne acting as president of the corporation.
It would seem that the complainants may be entitled to their request for an opportunity to examine the books and records of Worne Plastics Corporation and to an accounting by its officers. Taking the allegations of the bill of complaint to be true, for the purposes of the motion to strike, the pleadings are sufficient in law and fact to withstand an attack by way of a motion to strike for this relief as sought. In so far as the bill of complaint prays for this relief, the motion to strike will be denied.
Complainants contend that a receiver should be appointed because of the dissension existing between the majority and a portion of the minority stockholders. The affidavits filed herein disclose what appears to be a considerable and acrimonious dispute as to the effectiveness and commercial value of the formula allegedly developed by Howard E. Worne. Both the complainants and the defendants have presented to this court affidavits of chemists, physicists and scientists who allege on the one hand that the formula is valuable and on the other hand that the formula is worthless.
The business is at a standstill. The plant has been shut down and no acrylic resins are being produced. It would appear that there is little if any capital remaining for a continued commercial operation. In this state of affairs this court has been requested to enjoin the directors and stockholders from taking any action toward dissolving the Worne Plastics Corporation, which it is alleged the majority are threatening.
The State of Delaware has provided a method very similar to that provided under the Corporation Act of the State of New Jersey for the dissolution of a corporation. It provides, in brief, that if it shall be deemed advisable by the board of directors and "most for the benefit of any corporation organized under this chapter, that it should be dissolved" and the said board of directors shall thereupon adopt a resolution to *Page 334 
that effect and cause notice to be mailed to all of the stockholders and published in the county wherein it shall have its principal office at least three weeks successively once a week next preceding the time set for the holding of the meeting of the stockholders to consider the question of dissolution, if at such meeting two-thirds of the interest of all stockholders having voting power shall consent that the dissolution shall take place, the corporation shall thereupon be dissolved.
It is to be noted first that no such meeting of the board of directors of the complainant corporation has been held and, second, that under the method set forth in the Delaware statute, the stockholders must receive notice of the time and place of such meeting. It would appear, therefore, that the prayer for a restraint against any proceeding to dissolve the corporation in the future is premature. The initial action required to be taken to accomplish such a result has not yet been undertaken, nor does there appear any action in prospect from the allegations of the bill of complaint and attached affidavits which would call for the intervention of the Court of Chancery on this ground. This court is being called upon to pre-judge the action which may be taken by the directors and stockholders at some time in the future. All that now appears is that a meeting of stockholders has been called to consider the future of Worne Plastics Corporation. The bad faith of the stockholders in taking some future action at a regularly convened meeting will not be presumed. The question of the fraudulent or illegal motives of the individual defendants pertaining to the question of dissolution is hereafter treated.
In addition to complainants' request for a receiver to supervise the dissolution of Worne Plastics Corporation and the liquidation of its assets, the complainants pray for the appointment of a receiver on the grounds (1) that there has arisen such dissension among the governing body of the corporation that they are at an impasse which makes it impossible for the corporation to carry on its business with advantage to its stockholders, and (2) that the president was illegally removed from office and that there is no legal board of directors, and (3) that the individual defendants are prompted by *Page 335 
fraudulent motives in their handling of the affairs of the corporation, including a threatened dissolution.
Complainants make considerable moment of the impasse reached by the directors resulting from the dissension between the Rogosin interests and the Worne interests. This impasse and dissension seems to arise from the question as to the feasibility of the formula and as to whether the business of Worne Plastics Corporation can be conducted in a financially successful manner.
 As stated in In re New Jersey Refrigerating Co., 95 N.J. Eq. 215; 122 Atl. Rep. 832:
"Cases in which a court of equity has appointed a receiver of a corporation because of internal dissensions are comparatively rare, but the jurisdiction seems to be well settled."
The appointment of a custodial receiver in pursuance of the general inherent equitable jurisdiction of this court is a function which has been and should be accomplished only with extreme caution and upon, as was stated in Neff v. ProgressBuilding Materials Co., 139 N.J. Eq. 356; 51 Atl. Rep. 2d443, "imposing and persuasive supporting proof." The prayer for the appointment of a custodial receiver is, of course, for him to serve pendente lite. Under the present bill of complaint the prayer seems to contemplate a receivership to extend beyond such period.
As a general proposition, the Court of Chancery will not interfere with internal affairs of a corporation because of dissension unless there is no legally constituted governing body or that the dissensions are such as to make it impossible to carry on its affairs. Mere disagreement among the members of the board of directors is insufficient.
A resume of the cases in this state in which the above grounds were urged demonstrates the jurisdictional requisites.
In Einstein v. Rosenfeld, 38 N.J. Eq. 309, the stock interests were equally divided but the court refused to appoint a receiver because there was present no urgency for the "protection of the property or the business interests of the company."
In Archer v. American Water Works Co., 50 N.J. Eq. 33;24 Atl. Rep. 508, no receiver was appointed but the Chancellor *Page 336 
threatened to so appoint in the event the dissensions were not terminated. There was here involved an original failure to elect a board of directors.
In Edison v. Edison United Phonograph Co., 52 N.J. Eq. 620;29 Atl. Rep. 195, the court said as follows:
"The power of this court to appoint a receiver of a corporation, either because it has no properly-constituted governing body or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled, but I think it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation and proceed in the proper discharge of its duties, the court must lift its hand and retire."
In Sternberg v. Wolff, 56 N.J. Eq. 555; 42 Atl. Rep. 1078,
the stock was evenly divided between two sets of stockholders. A receiver was not appointed because the business was being conducted in full volume with usual profit to stockholders.
In Morse v. Metropolitan Steamship Co., 87 N.J. Eq. 217;100 Atl. Rep. 219 (modified in 88 N.J. Eq. 325;102 Atl. Rep. 524), the court said:
"I do not find that the courts of this state have in anywise limited the general doctrine which prevails in England and throughout this country that whenever because of gross abuse of trust, because of dissension among the members of the board of directors or the stockholders, because there is no properly-constituted board, or because the company has failed of its purpose, there is a necessity for judicial intervention a court of equity may intervene under its general jurisdiction and appoint a receiver and grant such other relief as may be necessary." *Page 337 
In the above case, however, the court specifically found that the allegations of fraud were substantiated. A receiver was not appointed for the dissension alone.
It seems well settled that the dissension which moves this court to act is not merely a disagreement as to policy or business judgment in which a majority force an honest judgment upon a minority. As stated in Edison v. Edison UnitedPhonograph Co., supra:
"But neither of the grounds, which this doctrine recognizes as sufficient to warrant the appointment of a receiver, exists in this case. The defendant corporation has a lawfully-constituted governing body, which is in peaceable possession of all its property, controlling and directing its business regularly and peacefully, in conformity to the judgment of seven of its nine directors. Two of the nine differ in judgment from the other seven. The two believe that the adoption of a different course of business from that which is now pursued would result in larger gains. Both methods are clearly within the purposes and powers of the corporation. Which method shall be pursued, or whether one or both, is a question which the law commits absolutely and unconditionally to the judgment of a majority of the directors. Though somewhat disguised, the real purpose of the bill in this case appears, when critically examined, to be to induce judicial action which shall substitute the judgment of a minority of the directors of this corporation for that of the majority. That cannot be done. It is beyond judicial power. No rule of law is better settled than that which declares that, so long as the directors of a corporation keep within the scope of their powers and act in good faith and with honest motives, their acts are not subject to judicial control or revision."
There are innumerable cases in New Jersey which clearly announce the principle that questions of business judgment are not subject to review in this court where honestly determined.Ellerman v. Chicago Junction Railways, c., Co., 49 N.J. Eq. 217; 23 Atl. Rep. 287; Merriman v. National Zinc Corp., 82 N.J. Eq. 493; 89 Atl. Rep. 764; Farmers Loan and Trust Co. v.Hewitt, 94 N.J. Eq. 65; 118 Atl. Rep. 267; Kelly v.Kelly-Springfield Tire Co., 106 N.J. Eq. *Page 338 545; 152 Atl. Rep. 166; Madsen v. Burns Bros., 108 N.J. Eq. 275; 155 Atl. Rep. 28; Ace Bus Trans. Co. v. South Hudson, c.,118 N.J. Eq. 31; 177 Atl. Rep. 360.
There does not appear anywhere in the pleadings or affidavits any substantiation of the claim that no legal board of directors is functioning, nor that the president was illegally deposed. If complainants are to succeed it must be that there is such dissension as will move this court to act. As appears from the affidavits, the disagreement of the board arises from the question of the feasibility of the formula for producing acrylic resins. Not only have a majority of the board of directors determined to cease further manufacture or production of such acrylic resins, but they have proceeded a step further in order to justify their opinion and have consulted with the stockholders. Complainants make a great point of the fact that production has shut down. The affidavits disclose little if any commercial production prior to the final complete shutdown of the plant by the majority of the board of directors, who felt that the business of the corporation was not economically sound and was being operated at a financial loss. This shut-down was not a result of dissension, but such dissension as exists results from the cessation of any production of acrylic resins for the above reasons.
The statutes of the State of Delaware specifically delegate the authority to determine whether to continue to conduct the business for which the corporation received a charter to its board of directors, subject to stockholder approval. As above quoted, the Delaware statute provides that if the board of directors deem it advisable and "most for the benefit of any corporation * * * that it be dissolved," such corporation may be dissolved. This certainly contemplates a cessation of business and a shutting down of production. Very clearly the question as to whether the corporation should continue to attempt to produce acrylic resin or should shut down further attempted production is a question of business judgment. The opinion of this court as to the desirability of either alternative cannot be substituted for that of the board of directors unless they are prompted by illegal or fraudulent motives. A determination of this policy is usually one for the board of *Page 339 
directors. If honestly decided, the court will not interfere with the board's action. The question of fraud or illegal motive is hereafter treated.
The third ground for the appointment of a receiver and injunctive relief, i.e., fraud or bad faith on the part of the directors, is best answered in the language of Citizens CoachCo. v. Camden Horse Railroad Co., 29 N.J. Eq. 299, as follows:
"It is entirely settled that a preliminary injunction will never be ordered unless from the pressure of an urgent necessity. The damage threatened to be done, and which it is legitimate to prevent, during the pendency of the suit, must be, in an equitable point of view, of an irreparable character. Such is the clear language and mandate of the cases from the earliest to the latest. As long ago as the year 1829 (Hal. Dig. 532), Chancellor Williamson, the elder, thus defined the practice: `An injunction ought not to be allowed in all cases of trespass, nor to protect persons in the enjoyment of every right. The court always, to restrain a trespasser, expects a strong case of destruction, or irreparable mischief to be made out, or that the trespass should have continued so long as to become a nuisance. A perseverance in committing acts of trespass is not sufficient.' And in the leading case of Bonaparte v. Camden and AmboyRailroad Co., Bald. C.C. 205, 217, the cautionary words of Judge Baldwin are equally emphatic against a too frequent resort to this writ. He says: `There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in cases of great injury, where the courts of law cannot afford an adequate or commensurate remedy in damages.'"
And again in Allman v. United Brotherhood of Carpenters,79 N.J. Eq. 150; 81 Atl. Rep. 116:
"It is perfectly well settled that whenever the complainant's case is doubtful on the law or the facts a preliminary injunction will not issue. To doubt is to deny. To justify the issuing of an interlocutory injunction the case made by *Page 340 
the complainant must exhibit a right free from doubt or reasonable dispute. Roberts v. Scull, 58 N.J. Eq. (13Dick.) 396."
The defendants have, by their answering affidavits, not only categorically denied the material allegations of complainants' bill and affidavits regarding an allegation of fraud, but have as well denied the allegation of the irreparable damage which might ensue from a failure to enjoin and appoint a receiver. The necessary elements for the appointment of a receiver on the grounds that dissension exists or that there is no legally constituted board of directors being absent, the request for a preliminary restraint and the appointment of a receiver on these grounds is denied.
The complainants' case on fraud or bad faith is not clear but is doubtful on the facts in the present status of the matter. As stated in Elevator Supplies Co. v. Wylde, 106 N.J. Eq. 163;150 Atl. Rep. 347:
"Courts do not ordinarily grant in limine by means of preliminary injunction the full measure of relief to which a complainant may be entitled on final hearing. It has been repeatedly held that a preliminary injunction should not be awarded except from the pressure of urgent necessity, and the injury to be prevented pendente lite be irreparable. Neither of such requisites are now apparent."
What has been stated above concerning the existence of fraud or bad faith on the part of the majority of the directors is applicable not only to such alleged fraudulent or illegal conduct generally but also to the alleged fraudulent or illegal conduct in so far as it concerns the alleged dissension among the board of directors and the proposed or threatened dissolution.
A preliminary restraint and the appointment of a receiver will be denied. There are, however, sufficient factual allegations of fraud or bad faith to cause a denial of defendants' motion to strike the bill of complaint. The motion to strike is therefore denied. *Page 341