George Kroener et al. }
vs. } Eq.No.
Howell H.Pancoast et al. }

March 31, 1926.

BAKER, J. Final hearing.

This is a bill brought by certain minority stockholders, representing roughly about one-fifth of the stock of the Wakefield Water Company, against the respondents, asking that they be enjoined from issuing certain bonds of the said Wakefield Water Company, said bonds to be secured by a trust mortgage upon the property of said company.

The law applying to a situation such as is now before the Court seems well settled and the courts in this state have followed what appears to be the general weight of authority. If the facts present a situation involving merely matters dependent upon the sound judgment and discretion of the officers of the company, then it is clear that the courts very properly will not undertake to interfere with the internal management of the corporation in question. In such a case the minority must abide by the wishes of the majority, providing the latter are acting in good faith.

Fletcher on Corporations, Vol. 6, Sec. 4065.

Peabody vs. Westerly Water Works, 20 R. I. 176.

Phillips vs. Providence Steam Engine Co., 21 R. I. 302.

It is equally well settled, however, that if the officers or the majority stockholders of the corporation do not act in good faith but take advantage of their positions to perform fraudulently acts leading to their own benefit and against the best interests of the corporation, causing injury to the minority stockholders, then in such a case equity will interfere to protect the rights of the latter.

Fletcher on Corporations, Vol. 6, Secs. 4062, 4063.

Armington & Sims vs. Palmer, 21 R. I. 109.

Stebbins vs. Michigan Wheelbarrow & Truck Co., 212 Fed. 19.

Flynn vs. Brooklyn City R. R. Co., 158 N. Y. 493.

Hawes vs. Oakland, 104 U. S. 450.

Morse vs. Met. S. S. Co. (N. J.) 100 Atl. 219.

Where the evidence in a case shows clearly that such a fraud or wrong is

being committed upon the rights of the minority stockholders in a corporation, then a court of equity is the only place to which they can come for redress.

An examination of the bill of complaint in the case at bar, and particularly the eighth paragraph thereof, shows that the principal basis for relief in said bill is an allegation of a fraudulent scheme and conspiracy on the part of the respondents. That being so, it is clear that the complainants in order to succeed must prove fraud by a fair preponderance of the evidence, and if they can not do so the bill must be dismissed. This is clearly the law in this jurisdiction as enunciated in several decisions.

Grant vs. Wilcox, 44 R. I. 94.

The main question presented, therefore, for the determination of the Court is whether or not the complainants have proved by a fair preponderance of the testimony that the contemplated action of the respondents which it is sought to enjoin constitutes fraud upon the rights of the complainants. On the testimony introduced the question is one of considerable difficulty.

It would appear that some years ago the Wakefield Water Company was in a rather precarious financial condition. There had been default on its bond issue for some considerable period of time. The entire bond issue of approximately $150,000, which it is now intended to retire by the issue of the proposed bonds to the value of $200,000, were all held by one family and no action toward the foreclosure of the trust mortgage securing the bonds was ever taken. The evidence shows, however, that as time went on the condition of the company improved; it was able to meet its current obligations, to pay its current bond interest, and gradually to pay off the accumulated interest. At the same time it was able from earnings to spend in betterments and extensions an average of perhaps $4000 a year for the last twelve or thirteen years. It now appears without dispute that all accumulated interest on its bonds has been fully paid, that its property and plant is in reasonably good condition, and its financial statement for the year 1925, after all expenditures, shows a net profit of $6000. In other words, it is clear from the testimony that at the present time the Wakefield Water Company is in a very good financial condition and that its prospects in the immediate future are reasonaby bright. (See testimony as to financial statement and see the testimony of Mr. Wilcox.)

Unquestionably fraud is difficult to prove. Parties performing an act do not openly state their purposes and intentions in connection therewith. Fraud is frequently a matter of motive and intent and it is only by drawing inferences from what is said and what is done by those interested that the Court can come to a conclusion as to whether or not a certain course of conduct constitutes fraud. It is clear, of course, that the word fraud itself does not have to be used and it seems also clear that it is not material whether the parties were necessarily conscious of any moral wrong. It seems to be sufficient if an act is fraudulent in fact in that it is inconsistent with an honest intent.

Eichenberg vs. Marcy, 18 R. I. 169.

Tillinghast, Receiver, vs. Champlin, 4 R. I. 173.

Complainants urge that the respondents' acts in regard to the contemplated bond issue constitute such fraud toward the rights of the complainants as to entitle them to relief and they draw particular attention to two circumstances. First, the complainants argue that raising the rate of interest from 5 per cent on the present bonds to 8 per cent on the proposed issue is a circumstance

needing explanation; and, second, the fact that the repsondents are proposing at this time to refund the present outstanding bonds to the amount of $150,000 by issuing new bonds with the increased rate of interest at a time six years before the maturity of the present issue, said issue coming due in 1932, is an indication which tends to show a fraudulent action on the part of the stockholders and directors.

In this connection it is most important to keep in mind in this case the fact that the majority stockholders and all the bondholders are one and the same persons. In this respect the case at bar differs somewhat from other cases which have been cited to the Court. Further, the bondholders control the board of directors. This being so, it is obvious that any action on the part of the directors or the majority stockholders should be closely scrutinized in order that it may be determined whether such action is for the best interests of the corporation as a whole, including the minority stockholders, or whether what is done is merely for the interests of the bondholders and the majority stockholders, who are one and the same. In other words, the respondents in their dealings with the affairs of the corporation should see to it that their acts are above suspicion.

The complainants claim that the proposed bond issue is merely for the purpose of diverting the net profits of the corporation from the stockholders to the bondholders and that as the majority stockholders are the bondholders the latter will not suffer but if the proposed bond issue is made the minority stockholders will lose their chance of getting any dividends on their stock and the value of their stock will be greatly reduced.

The respondents, on the other hand, contend that the proposed bond issue is merely a matter of business judgment incident to the proper management of the corporation and that under all the circumstances it is advisable that the present outstanding bonds be refunded at this time, and that in order to do so it is necessary that the interest rate be raise from 5 per cent to 8 per cent.

As bearing upon the good faith of the proposed issue and in order to help the Court decide whether or not the complainants have proved fraud, it is necessary to examine all the surrounding circumstances connected with the company and with the proposed issue. Certain facts are practically undisputed. It seems clear that the act authorizing the bond issue in question was passed through the General Assembly with little or no notice to the complainant stockholders. $50,000 of the new bond issue, it is stated, is intended for betterments and extensions. The testimony would seem to show that there does not at the present time appear to be any pressing need for large expenditures. Apparently current extensions can be cared for for several years. In the past they have been cared for out of the earnings at a time when the company was also paying back interest on its bonds, which it now no longer has to do.

It is apparently not denied that certain statements were made at the stockholders' meeting substantially to the effect that the contemplated action was in the interest of the bondholders, and that the bondholders as majority stockholders had the power to make the new issue and proposed to use it. These statements are testified to by several credible witnesses. It is not denied, of course, that the bondholders will chiefly profit by the proposed new issue. Apparently, from the testimony, no attempt of any kind has been made by the majority stockholders or by the officers of the corporation to borrow money at

a less rate of interest than 8 per cent. For the complainants Mr. Wilcox testified that in his opinion an issue such as this should be able to put out at possibly 7 per cent and perhaps a little less. Mr. Adams, one of the respondents' witnesses, thought such an issue might be floated for 7½ per cent.

The matter of refunding at the present time, six years prior to the maturity of the present issue, strikes the Court as perhaps the most important point to be considered. It would appear from the testimony that this is rather unusual in financing. To retire 5 per cent bonds at this time, six years before maturity, and substitute 8 per cent bonds in their place will, of course, greatly increase the fixed indebtedness of the corporation.

The reason given by the respondents for the refunding at this time is that the present issue of bonds has been held in a block in an estate and that these bonds are about to be distributed and that they will come into the hands of persons who, perhaps, will have different ideas about the management of the corporation, and that it will not be able to control the bonds as a unit hereafter. It does not seem to the Court, however, after giving the matter careful consideration, that this fact alone is sufficient ground for the refunding at the present time, particularly in the way suggested.

Complainants urge that possibly if the corporation is unable to meet the higher interest rate, the bondholders will be able to foreclose. The Court, however, would not consider this as an element of fraud because of the fact that for some years past the bondholders were in a position to foreclose if they so saw fit, and did not do so.

After going over the whole situation carefully, the Court has come to the conclusion that all the facts and circumstances, taken together, surrounding this proposed bond issue would tend to show that it is being made entirely for the benefit of the present bondholders and majority stockholders rather than having in mind the best interests of the corporation. It would seem that the contemplated action involves more than the mere judgment or discretion of officers or stockholders exercised in good faith and that the real purpose is to divert the larger part of the net earnings to the bondholders and away from the stockholders. This being so, the Court is of the opinion that the fair preponderance of the evidence shows that the effect of the contemplated action would amount to a fraud on the part of the respondents as far as the rights of the complainants, the minority stockholders, are concerned. The Court finds, taking all the circumstances of the case into consideration, that in its judgment the evidence is sufficient to entitle the complainants to the relief they ask for.

In regard to the issues of fact, as to issue No. 1, the Court finds that the earnings of the Wakefield Water Company are now sufficient to leave a net income available for interest at the rate of 8 per cent upon its bonded indebtedness and have been for some years although not formerly. The Court will answer issues No. 2 and No. 3, yes.

The prayer of the bill for an injunction is granted.

For complainants: Tillinghast & Collins.

For respondents: Percy W. Gardner.