THOMAS A. EDISON and GEORGE E. GOURAUD

v.

THE EDISON UNITED PHONOGRAPH COMPANY et al.

1. Nothing short of present actual insolvency will warrant the appointment of a receiver to wind up a corporation. Expected insolvency at some time in the future is not sufficient.

2. A court of equity, in the exercise of its general jurisdiction, may appoint a receiver of a corporation, either because it has no properly-constituted governing body, or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, but this power is always exercised with great caution and only for such time and to such an extent as may be necessary to preserve the property of the corporation and to protect the rights of its stockholders.

3. So long as the directors of a corporation keep within the scope of their powers and act in good faith and with honest motives, their acts are not subject to judicial control or revision.

4. If the stockholders of a corporation disapprove of the company's management, conducted without fraud or gross abuse of trust or consider their speculation to be a bad one, their remedy is to elect new officers or sell their stock and withdraw.

5. Where the question is one of mere discretion in the management of corporate business by directors, remedy cannot be had by application to a court of equity.

6. Where the majority keep within the scope of the powers of the corporation, no court has power to substitute the judgment of a minority of the directors for that of the majority.

On application for the appointment of a receiver, heard on bill and affidavits on the part of the complainants and affidavits on the part of the defendants.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker*, for the complainants.

*Mr. Anthony Q. Keasbey* and *Mr. Charles A. Beman* (of New York City), for the defendants.

VAN FLEET, V. C.

The complainants are stockholders of the Edison United Phonograph Company and have filed the bill in this case for the purpose of having the directors of the corporation displaced and this court take control of the corporation, and, through a receiver, manage and direct its business.    The special relief that the complainants ask at this time is that the court will find and declare that the corporation has not administered the trust imposed upon it according to law; that a receiver be appointed to carry on its business and to investigate the condition of its affairs and make report, to the end that its business may be continued or wound up according to the condition in which its affairs shall be found. On the argument three grounds were put forward as the basis of the relief asked—*first,* that the corporation is insolvent or will soon become so if its directors do not abandon their present method of conducting its business and adopt the method which the complainants insist should be adopted; *second,* that the directors, by the course of business they are now pursuing, are violating a trust which was imposed upon the corporation when the complainants assigned their inventions to it; and *third,* that dissensions exist among the directors, as to the most successful mode of carrying on the business of the corporation, of such a character and to such an extent as to make it impossible for the corporation to prosecute its business with advantage to the stockholders.

The Edison United Phonograph Company was organized under a general law of this state, in February, 1890, for the purpose, among other things, of manufacturing, buying and selling phonographs, and also of selling and assigning, and of licensing others to sell and use, patents, patent rights and inventions relating to the manufacture, use and operation of phono-

Edison v. Edison United Phonograph Co.

graphs. Within less than a month after its organization, it became the owner, by purchase and assignment, of all of Mr. Edison's inventions relating to speaking machines, whether secured by letters-patent or not, in every country of the world except the United States and Canada. The assignment also passed to the corporation all extensions of any letters-patent for such inventions which should thereafter be granted. Within about the same time the International Graphophone Company, a New York corporation, owning the patents for a speaking machine called the graphophone, assigned its patents to the defendant corporation. The object which the promoters of the defendant corporation had in view in its formation is apparent. They wanted to vest in a single person, endowed with corporate life for a long number of years, all known inventions for the construction of speaking machines, and thus avoid disputes respecting priority of invention or infringement, and so render the introduction and use of such machines throughout the world less difficult and more profitable than if independent attempts were made to exploit each invention. The corporation was organized with a capital of $1,000,000, divided into ten thousand shares of $100 each. Five thousand shares, representing $500,000, were issued to Mr. Edison in payment for the inventions and other rights transferred by him to the corporation, and a like number of shares were issued, for a like purpose, to the International Graphophone Company. The corporation still holds all the inventions and other property transferred to it by Mr. Edison and the International Graphophone Company, except the right to sell and use speaking machines in the Kingdom of Great Britain and Ireland. That right it sold, in December, 1892, to a corporation organized under the laws of Great Britain for £20,000 in cash and four thousand shares of the stock of the vendee corporation of the par value of £5 each, the cash and stock representing a value in our currency of about $200,000.

The case is destitute of the least proof tending to show insolvency. That, in cases of this kind, is the jurisdictional fact. The court can do nothing—neither issue an injunction nor appoint a receiver—until insolvency is first established. Until

that fact is satisfactorily proved, the court has no jurisdiction. *Atlantic Trust Co.* v. *Consolidated Electric Co., 4 Dick. Ch. Rep. 402, 405.* The complainants do not claim that the present indebtedness of the defendant corporation exceeds $107,000, nor that its principal assets, consisting of inventions, patents and patent privileges, are not worth all that the corporation paid for them, or that they would not bring, if sold in any market where their value is known, a sum largely in excess of the amount required to pay all the debts of the corporation. The complainants have not attempted, either by their own oaths or the oaths of others, to show the value of these assets. They say, however, that they have the fullest belief in their value, provided their method of utilizing them is adopted. The fact is that both parties to this litigation believe that these assets possess an immense value. They do not disagree as to their value, but the sole point in difference between them is as to how they can best be utilized. Their difference is one of judgment respecting the most expedient course of business and not in respect to a fact. The complainants say that if the present business policy of the corporation is not abandoned and their policy adopted, their assets will soon become worthless, and then insolvency must ensue; while the defendants, on the other hand, assert with equal confidence, as the result of their best judgment, that to make the business of the corporation a great financial success the corporation must adhere to its present business policy. This is the real point in controversy. Hence it is manifest that the complainants are not asking for the appointment of a receiver because the corporation is now actually insolvent, but because of a fear, resting entirely on conjecture, that it will become so at some time in the future. It is too plain to require demonstration that this court has no power to appoint a receiver to wind up a corporation because it is feared or even expected that it will become insolvent at some time in the future. Nothing short of present actual insolvency will warrant the appointment of a receiver for such a purpose.

The affairs of the defendant corporation are subject to the control of a board of nine directors. Two of the nine believe

that the most successful mode of carrying on the business of the corporation, and the best way to subserve and promote the interests of its stockholders, is by the establishment of agencies in different parts of the world for the sale and hire of speaking machines and adopting that as the leading feature of its business. The other seven do not concur in this belief. On the contrary, they believe that the business of the corporation can be made most successful and profitable by the sale of territorial rights and making that the principal part of its business. Each faction appears to be thoroughly persuaded that its method is the true one, and that the method of the other is injudicious, and that its judgment is wise and that the judgment of the other is fallacious. Neither denies or impugns the good faith and honesty of the other. This suit had its origin in this difference of belief. The complainants, to show that they have a right to have their method adopted, allege that when Mr. Edison assigned his inventions it was understood by all parties that the corporation should sell and hire instruments and not sell territorial rights, and they contend that, in consequence of such understanding, a trust arose in their favor by which they became entitled to have their method adopted by the corporation as the principal mode of conducting its business. If such an understanding had been fully proved, the proof of that fact would not, in my judgment, have given this court the least authority to displace the managers selected by the stockholders of this corporation and appoint a receiver to seize its property and manage its affairs. On a bill filed for that purpose, this court might, on being convinced by proof that such an understanding had existed, and that it formed a material part of the contract between the parties, engraft the understanding on the contract and require the managers of the corporation to respect it, but that is the utmost the court could do, at least until the managers should manifest a settled purpose to wantonly violate the contract as reformed. But the fact alleged has not been proved. Mr. Edison assigned his inventions by a writing, under seal, which defines with precision his rights and duties and the rights and duties of his vendee. An examination of that writing shows

quite conclusively that the understanding alleged has no founda-
tion in fact.    It shows, as does also the certificate of incorpora-
tion of the defendant corporation, that all parties understood
and desired that one of the means which should be used in
attempting to utilize the inventions was by the sale of territorial
rights.    The corporation was organized, it will be remembered,
for the purpose of selling and assigning, and of licensing others
to sell and use, patents, patent rights and inventions relating to
the manufacture, use and operation of phonographs.'   The powers
thus defined show quite clearly, as I think, that all the pro-
moters of the corporation understood and desired that one of the
principal means to be used in attempting to dispose of the inven-
tions should be by the sale of territorial rights.    This is made
even more certain by the writing by which Mr. Edison assigned
his inventions to the corporation.    It contains several provisions
regulating the sale of territorial rights.    For example, it pro-
vides that if a sale of a territorial right be made to a corporation
the name of the corporation shall include the word " Edison,"
and it also provides that the consideration received for the sale
of a territorial right, whether the right sold embraces an entire
country or only a part, shall be immediately divided among the
stockholders of the defendant corporation, unless the directors
shall, by a vote of two-thirds, otherwise decide.    This writing
contains other provisions, indicating with equal clearness the
meaning and understanding of the parties on the point in dis-
pute.    So that it would seem to be quite undeniable that while
this writing remains in its present form, and until the under-
standing alleged has been made a part of it by judicial decree,
the complainants will not be in a position where they will have
the least pretence of right to ask for any relief whatever based
on the trust or contract they allege.

The power of this court to appoint a receiver of a corporation,
either because it has no properly-constituted governing body or
because there are such dissensions in its governing body as to
make it impossible for the corporation to carry on its business
with advantage to its stockholders, I think must be regarded as
settled, but I think it is equally well settled that this power is

subject to certain limitations, namely, it must always be exercised with great caution and only for such time and to such an extent as may be necessary to preserve .the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully-constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation and proceed in the proper discharge of its duties, the court must lift its hand and retire. This is the doctrine, as I understand it, which was laid down by Vice-Chancellor Malins in *Featherstone, Cooke and Trade Auxiliary Co.* v. *Vickers, 16 Eq. Cas. 298, 303,* and which was approved by Chancellor Runyon in *Einstein* v. *Rosenfeld, 11 Stew. Eq. 309,* and by Chancellor McGill in *Archer* v. *American Water Works Co., 5 Dick. Ch. Rep. 33.*

But neither of the grounds, which this doctrine recognizes as sufficient to warrant the appointment of a receiver, exists in this case. The defendant corporation has a lawfully-constituted governing body, which is in peaceable possession of all its property, controlling and directing its business regularly and peacefully, in conformity to the judgment of seven of its nine directors. Two of the nine differ in judgment from the other seven. The two believe that the adoption of a different course of business from that which is now pursued would result in larger gains. Both methods are clearly within the purposes and powers of the corporation. Which method shall be pursued, or whether one or both, is a question which the law commits absolutely and unconditionally to the judgment of a majority of the directors. Though somewhat disguised, the real purpose of the bill in this case appears, when critically examined, to be to induce judicial action which shall substitute the judgment of a minority of the directors of this corporation for that of the majority. That cannot be done. It is beyond judicial power. No rule of law is better settled than that which declares that, so long as the directors of a corporation keep within the scope of their powers and act in good faith and with honest motives, their acts are not

subject to judicial control or revision.   Perhaps no better state-
ment of this principle can be found than that which Vice-
Chancellor Green made in *Ellerman* v. *Chicago Junction Co., 4
Dick. Ch. Rep. 217, 232,* when he said: " Stockholders cannot
question, in judicial proceedings, corporate acts of directors, if
the same are within the powers of the corporation, and, in fur-
therance of its purposes, are not unlawful or against good morals,
and are done in good faith and in the exercise of an honest judg-
ment.   Questions of policy of management, of expediency of
contracts or action, of adequacy of consideration not grossly dis-
proportionate, of lawful appropriation of corporate interests, are
left solely to the honest decision of the directors if their powers
are without limitation and free from restraint.   To hold other-
wise would be to substitute the judgment and discretion of others
in the place of those determined on by the scheme of incorpora-
tion."   The same principle was restated by the same Vice-
Chancellor in *Sewell* v. *East Cape May Beach Co., 5 Dick. Ch.
Rep. 717, 723.*   And Chancellor McGill, in *Benedict* v. *Colum-
bus Construction Co., 4 Dick. Ch. Rep. 23, 36,* expressed it in
these words: " If stockholders in a corporation disapprove of
the company's management, which is conducted without fraud,
or by action not *ultra vires,* or not in gross abuse of trust, or
shall consider their speculation a bad one, their remedy is to
elect new officers or sell their shares and withdraw.   Where the
question is one of mere discretion in the management of corpo-
rate business, or of doubtful event in the undertaking in which
the corporation had embarked, remedy cannot be had by appli-
cation to a court of equity."

These utterances leave nothing more to be said.   The com-
plainants' application must be denied, with costs.