This matter is now before the court on a bill filed by complainants who own in the aggregate three thousand two hundred and sixty-five shares of the capital stock of defendant Burns Brothers, a corporation of the State of New Jersey, on behalf of themselves and all other stockholders or creditors desiring to join in and contribute to the expense of the suit. *Page 277 
Said defendant has an authorized capital stock of $17,000,000, of which $16,580,000 is issued and outstanding as follows: Preferred, $2,580,000; common class "A," $10,000,000; common class "B," $4,000,000. The defendants named in the bill comprise in addition to Burns Brothers the personnel of the entire board of directors of the corporation (twenty-five in number), the Lehigh Valley Coal Company, Lucerne Coal Corporation, and Delaware, Lackawanna and Western Coal Company. Complainants pray (1) that the several defendants may answer, and (2) that the defendant Burns Brothers be enjoined from exercising any of its franchises, from receiving debts due to it, from paying or transferring any of its money or effects, from continuing its business, that it be decreed insolvent and that its business has been and is being conducted at a great loss and greatly prejudicial to the interests of its creditors and stockholders, that a receiver be appointed, that a writ of injunction and a writ of subpoena issue, and for such further and other relief in the premises as the nature of the case may require. No relief whatever is prayed against any of the defendants other than Burns Brothers, and consequently the bill will be dismissed as to all defendants other than Burns Brothers, upon the familiar principle that where no relief is prayed against a defendant named in a bill the bill will be dismissed. Burns Brothers will hereinafter be referred to as defendant, the Lehigh Valley Coal Company will be referred to as Lehigh, and the Delaware, Lackawanna and Western Coal Company will be referred to as Lackawanna. It would serve no useful purpose for me to determine herein the applicability of chapter 221 of the laws of 1931, amending section 65 of the Corporation act (Revision of 1896, page 277, as amended by P.L. 1912 p. 535), which took effect the day following the hearing of this cause, because of the fact that the case sub judice is to be determined upon its merits upon the proofs submitted. I therefore refrain from such determination. The bill of complaint is not verified by any of the complaining stockholders as to any of its essential allegations other than the fact of their being stockholders. Rule 199 of this court provides: *Page 278 
"Where injunctive relief is prayed, and the facts which are relied upon for injunction are not within the knowledge of complainant, such facts shall be verified by the oath or affirmation of some person who has knowledge of the facts, unless under the peculiar circumstances of the case the court shall dispense with such additional verification." See, also,Youngblood v. Schamp, 15 N.J. Eq. 42; Perth Amboy Gas LightCo. v. Kilek, 101 N.J. Eq. 805. Such verification of the bill as has been attempted is by the affidavit of a member of a law firm which manifests throughout argument and conclusions of the affiant, matters clearly in the nature of hearsay andadvice and opinions given by the firm to persons therein referred to, none of which constitutes legal proof of the allegations of complainants' bill, and although in view thereof I regard the bill as unverified, nevertheless, mindful of the immediate importance to the parties in interest of the confirmation or rejection of the project planned by the directors and stockholders of the defendant, and the fact that I have carefully considered the bill and affidavits submitted, I deem it advisable to disregard the lack of proper verification of the bill and determine the case upon its merits as disclosed by the bill and affidavits. The bill of complaint contains numerous charges of perfidy against the former president of the defendant and his associate officers and directors which have not been substantiated. The allegation of insolvency has not been established. A corporation is said to be insolvent within the purview of section 65 of the Corporation act, supra, when there is a general inability to meet pecuniary obligations as they mature by means of either available assets or an honest use of credit. Empire State Trust Co. v. Trustees of Wm. F. Fisher Co., 67 N.J. Eq. 602, 604; Wright v. American Finance andSecurities Co., 85 N.J. Eq. 181, 183; Hoover Steel Ball Co. v.Shafer Ball Bearing Co., 89 N.J. Eq. 433; Auburn Button Works
v. Perryman Electric Co., 107 N.J. Eq. 554; First National Bankof Lyndhurst v. Bianchi Smith, Inc., 106 N.J. Eq. 333;Puritan Corporation v. Gannon, Ibid. 503. To grant the relief prayed by complainants herein (in view of the *Page 279 
fact the defendant is not insolvent) three statutory requisites must be clearly established — (1) that the defendant's businesshas been conducted at a great loss and greatly prejudical to the interests of its creditors or stockholders; (2) that its business is being so conducted; (3) that its business cannot
be conducted with safety to the public and advantage to the stockholders. Such statutory requisites must be clearly manifest in order to confer jurisdiction upon the court. Kelly v.Kelly-Springfield Tire Co., 106 N.J. Eq. 545. The proofs herein do not establish such requisites. The complainants have failed to establish by clear and convincing proof the allegations of the bill upon which they base their claim for relief. The proofs herein demonstrate that the defendant prospered in the years 1925 to 1929 inclusive, that in the year 1930 it suffered a loss of $1,387,599.46, and for the first three months of the year 1931 it made a net profit of $117,295.65. The aforesaid loss cannot be ascribed to mismanagement or fault of the officials who conducted defendant's business, but to the general business depression suffered by all business concerns. Cash resources for the period December 31st, 1930, to March 31, 1931, increased from $500,000 to $1,400,000. Whether the business of a corporation should be operated at a loss during a business depression, or close down at a smaller loss, is a purely business and economic problem to be determined by the directors, and not by the court, and the judgment of a majority of the directors must prevail in the absence of bad faith or abuse of power. Farmers' Loan and TrustCo. v. Hewitt, 94 N.J. Eq. 65; affirmed, Ibid. 187; Kelly v.Kelly-Springfield Tire Co., supra; Auburn Button Works v.Perryman Electric Co., supra. Defendant is an extensive wholesale and retail dealer in anthracite and bituminous coal, and fuel oil and gasoline, in the area known as the metropolitan district which embraces the greater city of New York and its environs, and operates a large number of coal yards within such area and throughout New York, New Jersey, and New England States. It has coal piers in New Jersey, an ice plant in Long Island, garages, repair depots and branch offices in various places, a *Page 280 
coal shipping plant in Hampton Roads, Virginia, an agency in England, and through one of its subsidiaries it operates a plant with extensive loading facilities in Norfolk, Virginia. Defendant employs more than two thousand full-time employes, and during seasonal periods additional part-time employes. It owns and operates one hundred and twenty-five barges, more than six hundred automobile trucks, and numerous horse-drawn vehicles. Its annual sales aggregate seven million tons of anthracite coal, two million tons of bituminous coal, and its monthly sale of fuel oil and gasoline is said to be approximately one million gallons. It is a corporation of great magnitude and a business asset of substance and importance to the public which must be cautiously dealt with because, as stated in Greenbaum v. Lafayette andBroad Realty Corp., 96 N.J. Eq. 317, 319: "Depriving a statutory legal business entity of its corporate life, is a judicial act which should not be lightly exercised, since the intervention of the court carries with it very often in practical execution not only the destruction of the livelihood of those who subsist by its existence, but also the investments of those who have confidently contributed their means to its successful creation, and, finally, but not at all the least of its unfortunate results, such an interposition may be the means of removing from the field of honest successful endeavor, a business asset of substance and importance to the well-being of the state." The grievances and criticisms, real or fanciful, which complainants apparently considered themselves warranted in urging herein against the ways and means resorted to in the conduct of the business of the defendant during the administration of its former president and the board of directors associated with him cannot reasonably be urged as to the conduct of business since January 9th, 1931, when the new board of directors and officers who are now serving were elected. Only four of the persons who served as directors with the former president are now serving as directors. The proofs herein manifest that the newly-elected president is eminent in the coal industry which he has been actively engaged in for the past thirty years. It has not been established herein, nor has it *Page 281 
been urged, that the present officers and directors of defendant are not capable and conscientious. The proofs manifest they are capable and experienced business men of high repute, all of whom are striving to the best of their ability to advance the business interests of the defendant. Affidavits filed herein express optimism for the betterment of the business affairs of defendant in the near future, and the affiants declare that as a result of economies recently effected, and such as planned for the current year, a very large saving will result. Items which indicate such economies and saving are mentioned in the affidavit of President Swayne. Section 12 of the Corporation act (2 Comp. Stat. 1910 p.1606) provides that the business of every corporation shall be managed by its directors. The authority of the directors in the conduct of the business of the corporation must be regarded as absolute when they act within the law. It is a well known rule of law — oft repeated — that questions of policy of management are left solely to the honest decision of the board of directors. The court is without authority to substitute its judgment for the judgment of the board of directors when they act within the law. The extraordinary power conferred upon the court by section 65 of the Corporation act, supra, must be exercised with caution, and only when the circumstances of the case and the ends of justice require it. Ellerman v. Chicago Junction Railways and UnionStockyards Co., 49 N.J. Eq. 217; Elevator Supplies Co. v.Wylde, 106 N.J. Eq. 163; Kelly v. Kelly-Springfield Tire Co.,supra; Auburn Button Works v. Perryman Electric Co., supra.
The principal grievance urged in argument by counsel for complainants herein is the avowed purpose of the president and directors of defendant to effect what such officers regard to be an advantageous plan for the borrowing of $9,000,000 — $8,600,000 of which to be utilized in the payment of obligations to banks,Lehigh and Lackawanna, the remainder to be placed in the treasury for general business uses, which plan contemplates an amendment of defendant's certificate of incorporation to provide for changing the now authorized one hundred thousand shares of class A common stock with *Page 282 
out par value into one hundred thousand shares of new class A common stock without par value, with a stated capital of $60 per share, and for changing the now authorized one hundred thousand shares of class B common stock without par value into one hundred thousand shares of new class B common stock without par value, with a stated capital of $10 per share, such new stock to have the same respective rights, privileges and restrictions as the stock it replaces, except the respective stated capital amounts per share above named; and to provide for the reduction of the capital of the company to $9,580,000 by issuing the one hundred thousand shares of the new class A common stock having a stated capital of $60 per share in exchange for and in lieu of the one hundred thousand shares of heretofore authorized class A common stock (which have a stated capital of $100 per share), share for share, and by issuing the one hundred thousand shares of new class B common stock having a stated capital of $10 per share in exchange for and in lieu of the one hundred thousand shares of heretofore authorized class B common stock (which have a stated capital of $40 per share), share for share. No proof has been established herein to indicate the contemplated plan to be in anywise sinister in purpose. The proposed loan is to be obtained without any cost or expense whatever to the defendant. The serial notes to be issued for said loan, and the application of the proceeds thereof, will not increase the defendant's liabilities. It will result merely in a funding of the indebtedness now due to banks and Lehigh and Lackawanna, in serial notes extending over a period of sixteen years, bearing interest at the rate of five per cent. per annum. The indebtedness thus funded now bears interest at the rate of six per cent. per annum. The proponents of the refinancing plan aforesaid aver that economies and saving will be effected which will materially enhance the defendant's financial status. In Farmers' Loan and Trust Co. v. Hewitt,supra, it was held that ways and means of refinancing a corporation is a matter to be determined by the directors. The case of Berger v. United States Steel Corp., 63 N.J. Eq. 506,
is authority for *Page 283 
the proposition that the manner in which a duly authorized plan is to be carried through is part of the business of the corporation, and, in the absence of fraud or bad faith, is not the subject of judicial control to any greater extent than other business of the corporation, and that the court cannot substitute its judgment for that of the directors or a majority of the stockholders. The two cases above cited are illustrative of the well-established principle of law that business and economic problems are to be considered and determined by defendant's directors, and not by the court, and that the judgment of a majority of the board of directors must prevail in the absence of fraud, ultra vires action, illegality, or a showing of malafides or abuse of power tantamount to fraud. It may reasonably be assumed that defendant's directors, enjoying as they do, as evidenced by the overwhelming stockholders' vote herein mentioned and the unanimous vote of the board of directors, confidence in their activity and undertaking, will pursue a course of action which in their judgment will best subserve the interests of the defendant and its stockholders. In Ellerman v. ChicagoJunction Railways and Union Stockyards Co., supra, the court said: "Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation and in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment." To the same effect are the cases of Benedict v. Columbus ConstructionCo., 49 N.J. Eq. 23, and Edison v. Edison United PhonographCo., 52 N.J. Eq. 620, 627. It is significant that the contemplated plan for the funding of the aforesaid indebtedness, and the changing of capital stock, together with the creation of a voting trust agreement as auxiliary to said plan, has been approved by the holders of eighty two thousand seven hundred and nineteen shares of class A common stock out of an authorized issue of one hundred thousand shares of such class of stock, and that no voters of such class of stock voted in opposition thereto, and that holders of seventy-nine thousand one hundred and fifty shares of class B common *Page 284 
stock out of an authorized issue of one hundred thousand shares of such class of stock voted in favor of such plan, and that the only shares of such class of stock voting in opposition thereto (seven hundred shares) was that of a stockholder who was plaintiff in a suit in the nature of a representative action recently instituted against the defendant in the New York supreme court, referred to in the affidavit of President Swayne filed herein, wherein said stockholder sought to enjoin the consummation of the plan herein mentioned and which suit was determined adverse to said stockholder. It is significant also that more than ninety per cent. of the owners of preferred stock voted their approval of the aforesaid plan, and that no holder of preferred stock voted against same. It thus appears that stockholders of defendant have overwhelmingly manifested by their votes their confirmation of the judgment of the board of directors and their approval of the entire plan. Such vote is particularly significant as indicating that the approving stockholders consider the plan to be for the best interest of the defendant, and in view thereof, and inasmuch as it does not appear herein that the plan aforesaid is without legal authority, such meagre number of dissentients as appears by the proofs herein to be endeavoring to thwart the purposes of such overwhelming majority of shareholders should not be encouraged in their endeavor to deprive such majority of their rights in the premises. Bingham v. Savings Investment and Trust Co.,102 N.J. Eq. 302. It was urged in argument in behalf of complainants that if the proposed plan be effected, and default be made in an agreement proposed to be entered into as part of said plan, judgment may be entered against defendant in the full amount of $9,000,000 or so much thereof as may, upon default, be due to the holders of the serial notes to be issued. It appears to me the complainants are unreasonably apprehensive of the results of the proposed project. The creditors to whom is now due the sum of approximately $8,600,000 (the banks, Lehigh, Lackawanna) may now, if so disposed, institute suit against the defendant and obtain judgment therefor, thereby accomplishing the result complainants are *Page 285 
apprehensive of. The effectuation of a voting trust agreement which complainants urge would be detrimental to their interests as stockholders may not so result. Voting trust agreements are recognized. They are not illimitable in form, purpose and effect. The defendant and Lehigh and Lackawanna have interests in common. They contemplate continued mutual business dealings on a large scale. Incidental thereto they deem it advisable to arrange for amicable facilitation of their business dealings. Complainants urge that such proposed dealings will not be conducive to the best interests of the defendant. The board of directors is authorized by law to deal with such matter, and the judgment of the board with respect thereto is controlling unless their action is ultra vires, fraudulent, or illegal. The court cannot anticipate what definite action defendant's directors may take (notwithstanding authority conferred upon them by the stockholders) with respect to the matters in question. Any comment the court might at this time make with respect thereto would necessarily be regarded as gratuitous and based upon conjecture. Such is not permissible. If the proposed voting trust agreement be consummated, complainants or any of the stockholders who may consider themselves aggrieved in consequence thereof may in an appropriate proceeding resort to this court for relief, and thereupon the court will adjudge the lawful character of such agreement. The court has not now before it for consideration the form of the proposed voting trust agreement. I have in mind that voting trust cases which have been considered by our courts have established the principle that every stockholder is entitled to the benefit of the judgment of every other stockholder in the management of the affairs of the corporation, and that agreements which sever the beneficial interest in a stock from its voting power are in many instances a violation of such right which courts of equity will in an appropriate proceeding prevent by injunction. Robotham v. Prudential Insurance Co., 64 N.J. Eq. 673,701.
I will advise a decree dismising the bill of complaint and order to show cause issued thereon. *Page 286