This matter concerns an order to show cause why a custodial receiver should not be appointed for the defendant Mary A. Riddle Company and why the Mary A. Riddle Company and its directors and officers should not be enjoined in certain respects. From the bill and moving affidavits and the answering affidavits it appears that the defendant Mary A. Riddle Company is a Delaware corporation incorporated in 1917. There is an authorized capital stock structure of *Page 316 
3,000 shares, of which 2,000 shares are presently issued and outstanding. Of these 2,000 shares the complainants Donald Riddle and Graeme Riddle own a total of 816 shares, the defendants Florence M. Riddle, Hugh Riddle and Bruce Riddle own a total of 1,173 shares. The balance of the stock issued and outstanding is owned by five individuals, no one of whom owns more than three shares of stock. The complainants are brothers of the defendants Hugh Riddle and Bruce Riddle and sons of the defendant Florence M. Riddle. These five Riddles, together with Isabel Sickler, the owner of three shares of stock, constitute the board of directors of the defendant corporation. The officers of the corporation are Florence M. Riddle, president, Hugh Riddle, vice-president and treasurer, Isabel Sickler, vice-president, Bruce Riddle, secretary, Donald Riddle, assistant secretary and Graeme Riddle, assistant treasurer. The affidavits disclose that all of the directors and officers are residents of the State of New Jersey; that all of the stockholders, with the exception of one owning three shares of stock, are as well residents of the State of New Jersey; that all of the assets of the corporation are located within the State of New Jersey; that the books and main office of the corporation are located in the State of New Jersey and that practically all of the business of the corporation is done in the State of New Jersey. The corporation is practically a closed family corporation, having been organized by William Riddle, the deceased husband of Florence M. Riddle, for the purpose of holding title to real estate purchased by William Riddle and other investments made by him. The assets of the corporation presently consist principally of two parcels of real estate situate in the City of Atlantic City, commonly known as the Riddle Building at Pennsylvania Avenue and the Boardwalk, with the Steeplechase Pier on the opposite side of the Boardwalk and the property at Nos. 7 to 15 South Tennessee Avenue, which said assets have a book value, before depreciation, of upwards of $900,000. The corporation has in addition some cash and other investments.
From 1928 to date the corporation has been operated in such a manner that its outstanding indebtedness was reduced *Page 317 
from $624,947.10 to $121,500.00. The principal business of the corporation is the management of its real estate and the handling of its other investments. The complainants' prayer for the appointment of a custodial receiver and the granting of a restraint is predicated upon an alleged breach of trust on the part of a majority of the board of directors, of the fiduciary relationship owed to them as stockholders of the said corporation. The complainants complain particularly that Hugh Riddle is the dominating personality of the board of directors and that under his guidance the corporation has violated its trust relationship to the minority stockholders in the following respects: (1) It has permitted Hugh Riddle to use the office of the corporation for his own private business and without any adequate compensation to said corporation therefor; (2) that excessive salaries have been paid to Florence M. Riddle, Hugh Riddle and Bruce Riddle; (3) that the Mary A. Riddle Company has done business with one Eden Company, which latter corporation is the alter ego for Florence M. Riddle, to the detriment of the Mary A. Riddle Company; (4) that the Mary A. Riddle Company has entered into a contract for the construction of stores on real estate owned by it on South Tennessee Avenue, Atlantic City, New Jersey, which said stores will not only constitute an unprofitable investment but are being constructed not because such construction would benefit the corporation but because the said Hugh Riddle desires the use of one of them for his private business and without the payment of any compensation to the corporation.
The answering affidavits deny that the office of the company is presently being used by Hugh Riddle without any contribution or compensation to the Mary A. Riddle Company, and that excessive salaries are being paid. These affidavits attempt to explain the dealings between the Mary A. Riddle Company and the Eden Company, which said dealings are allegedly to the best interest of the Mary A. Riddle Company. It is further disclosed, in connection with the proposed construction of stores on South Tennessee Avenue, that the complainants as well as the individual defendants, participated in several meetings of the board of directors of the *Page 318 
Mary A. Riddle Company in authorizing the preparation of plans and specifications and in analyzing the prospective income from said stores. It further developed that thereafter and more particularly on May 21st, 1947, at which time bids were received for the construction of the said stores, a majority of the board of directors voted to award the contract over the objections of the present complainants. However, nothing further was done in connection with this objection until June 22d 1947, when the present bill was filed, at which time the construction was approximately 8% completed. It also appears from the affidavits that the complainants attended a meeting on December 12th, 1946, at which time salaries were set, including salaries to each of them, and that they then voted in favor of such salaries.
As above stated, it is to be noted that complainants' bill of complaint predicates its prayer for relief upon a violation of the trust relationship owed to complainants as stockholders, and hence cestuis que trust, resulting from a fraudulent conspiracy upon the part of their mother and two brothers, which violation of trust worked to their detriment as minority stockholders.
It must be conceded at the outset that under the law the directors of the corporation occupy a fiduciary position toward the corporation and are bound to act for its best interests. The board of directors is the governing body of the corporation and is vested with the management of the corporate property, business and affairs. The conduct of the business of the corporation must be exercised by the directors honestly and in good faith, for what the directors, in their best judgment, deem to be for the best interest of the corporation. The application here is for a custodial receiver, which is an appointment pendente lite in order that the subject-matter of the suit may be preserved and to protect the interest of the litigants. Having in mind the foregoing generalizations, it becomes necessary to ascertain whether the circumstances require the appointment of a receiverpendente lite.
As has been stated in Neff v. Progress Building MaterialsCo., 139 N.J. Eq. 356; 51 Atl. Rep. 2d 443, the appointment of such receivers is pursuant to the inherent equitable *Page 319 
jurisdiction of this court, which is exercised only with supreme caution and upon imposing and persuasive supporting proof. The appointment of such receivers is not a remedial measure to which a litigant is entitled as a strict legal right. It emanates in the given case from the exercise of sound judicial discretion. The authorities cited in this case are ample authority for such a statement.
In order to ascertain whether the required proof of fraud or bad faith is present, the affidavits of both the moving parties and the defendants must be examined. The affidavits filed by the defendants categorically deny that Hugh Riddle has been using the offices of the corporation for his own business, without any compensation to the Mary A. Riddle Company, and that excessive salaries are being paid. As a matter of fact, an explanation of the arrangement for the use of the offices is given and a detailed statement of the services rendered by Florence M. Riddle, Bruce Riddle and Hugh Riddle in substantiation of the salaries paid to them. The explanation of the dealings with the Eden Company is to the effect that the credit of the corporation is not affected by loans made by the Eden Company, which said loans are unsecured, and that as a result the corporation is in a position, if it should be deemed necessary and advisable, to use its collateral for other and further borrowings. It would seem that this is a question of business judgment with which we will deal later. The sole factual support for any alleged fraud in connection with the construction of the stores on South Tennessee Avenue lies in a recital of the intent upon the part of Hugh Riddle to use one of these stores for his own business, without paying any rental to the corporation. This again is categorically denied by Hugh Riddle.
It is generally recognized in this state that so long as the directors of a corporation exercise their judgment upon questions of policy or management honestly and sincerely that this court is without authority to substitute its judgment as to the advisability of the proposed course of action for such judgment of the board of directors. In Ellerman v. Chicago JunctionRailways, c., Co., 49 N.J. Eq. 217; 23 Atl. Rep. 287, the court said as follows: *Page 320 
"Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation, and, in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors if their powers are without limitation and free from restraint. To hold otherwise would be to substitute the judgment and discretion of others in the place of those determined on by the scheme of incorporation."
See, also, Merriman v. National Zinc Corp., 82 N.J. Eq. 493;89 Atl. Rep. 764; Farmers Loan and Trust Co. v. Hewitt, 94 N.J. Eq. 65; 118 Atl. Rep. 267; Kelly v. Kelly-Springfield Tire Co.,106 N.J. Eq. 545; 152 Atl. Rep. 166; Madsen v. Burns Bros.,108 N.J. Eq. 275; 155 Atl. Rep. 28; Ace Bus Trans. Co. v. SouthHudson, c., 118 N.J. Eq. 31; 177 Atl. Rep. 360.
In Laredef Corp. v. Federal Seaboard Terra Cotta Corp.,131 N.J. Eq. 368; 25 Atl. Rep. 2d 433, the court aptly expressed the restriction upon interfering with the internal government of a corporation, as follows:
"The corporation is perfectly solvent and the authority of the directors when exercised in good faith and within the law should be regarded as absolute. It is a well settled rule of law that questions of business policy devolve upon the officers and directors who are elected by the stockholders for the precise purpose of determining such problems. It is peculiarly their duty and prerogative to evaluate the business outlook, and while the court may not be as sanguine as they, the substitution of its judgment for that of the chosen managers of the business is not justified in the circumstances here disclosed."
In order to sustain the present application the affidavits must disclose imposing and persuasive supporting proof that there has been a breach of trust or that the directors are motivated with fraudulent intent. The business of the corporation *Page 321 
is apparently being conducted as it has been for some years past by the same officers and directors and without objection from complainants, the minority of the board of directors. There seems no present reason for the intervention of the Court of Chancery through the use of its strong arm, i.e., the appointment of a receiver and a restraint of the present officers and directors from functioning. If, upon final hearing, it develops that the salaries were unconscionable, that some rental should have been paid for the offices occupied by Hugh Riddle or that the dealings with the Eden Company were not for the best interests of the Mary A. Riddle Company, the defendant directors may be made to account and to reimburse the corporation for that which they may have fraudulently taken from it.
The allegation of fraud, in so far as the construction of the stores is concerned, is not such as to move this court upon this application, to appoint a receiver and grant the prayer for an injunction. The sole fraud there alleged is the intention and desire of Hugh Riddle to obtain one free store, which intent he has, by affidavit, denied.
Aside from the imputation of fraud attendant upon a presumption that the said Hugh Riddle does so intend to use one store, there is not present any other factual allegation from which fraud could be spelled. The determination of whether the erection of the stores is a sound investment is one for the directors, in their honest judgment, to determine, without any interference by this court.
In Edison v. Edison United Phonograph Co., 52 N.J. Eq. 620;29 Atl. Rep. 195, the court said as follows:
"But neither of the grounds, which this doctrine recognizes as sufficient to warrant the appointment of a receiver, exists in this case. The defendant corporation has a lawfully-constituted governing body, which is in peaceable possession of all its property, controlling and directing its business regularly and peacefully, in conformity to the judgment of seven of its nine directors. Two of the nine differ in judgment from the other seven. The two believe that the adoption of a different course of business from that which is now pursued would result in larger gains. Both methods are clearly *Page 322 
within the purposes and powers of the corporation. Which method shall be pursued, or whether one or both, is a question which the law commits absolutely and unconditionally to the judgment of a majority of the directors. Though somewhat disguised, the real purpose of the bill in this case appears, when critically examined, to be to induce judicial action which shall substitute the judgment of a minority of the directors of this corporation for that of the majority. That cannot be done. It is beyond judicial power. No rule of law is better settled than that which declares that, so long as the directors of a corporation keep within the scope of their powers and act in good faith and with honest motives, their acts are not subject to judicial control or revision."
It would likewise seem that upon this application there is not sufficient to warrant the court to enjoin the further construction of these stores, having particularly in mind that the dissenting stockholders, the complainants herein, took no action whatsoever after the formal action of the board of directors in awarding the contract, and until the structure had actually been at least 8% completed.
Subsequent to the authorization of the board of directors to enter into a contract for the construction of the stores on South Tennessee Avenue and prior to the filing of the bill herein, such a contract was executed and work commenced thereunder. The complainants stood by with full knowledge of the alleged wrongful acts on the part of the majority of the board of directors without taking any steps to set aside the action of the board of directors in awarding this contract. The rights of the builder, an innocent third party, have now intervened. The complainants have delayed for an unreasonable time under the circumstances, without taking any action. It would be unfair to now enjoin the completion of the contract commenced under the above circumstances. Both the corporation and the builder were prejudiced by the delay. See Bookman v. R.J. Reynolds TobaccoCo., 138 N.J. Eq. 312.
Complainants are, of course, entitled to be protected as stockholders of the defendant corporation, and especially as minority stockholders, from any acts of the board of directors *Page 323 
which are prompted by fraudulent motive or are done in breach of trust owed to them. In the affidavits filed herein, however, it would appear that this application was precipitated by a disagreement as to the business policies established by a majority of the board of directors. On final hearing it may, of course, develop that the defendants are prompted by illegal and improper motives in their general conduct of the business affairs of the defendant corporation, in which event they can be held accountable, as above stated. The answer to complainants' present application for preliminary restraint is best found in CitizensCoach Co. v. Camden Horse Railroad Co., 29 N.J. Eq. 299, as follows:
"It is entirely settled that a preliminary injunction will never be ordered unless from the pressure of an urgent necessity. The damage threatened to be done, and which it is legitimate to prevent, during the pendency of the suit, must be, in an equitable point of view, of an irreparable character. Such is the clear language and mandate of the cases from the earliest to the latest. As long ago as the year 1829 (Hal. Dig. 532), Chancellor Williamson, the elder, thus defined the practice: `An injunction ought not to be allowed in all cases of trespass, nor to protect persons in the enjoyment of every right. The court always, to restrain a trespasser, expects a strong case of destruction, or irreparable mischief to be made out, or that the trespass should have continued so long as to become a nuisance. A perseverance in committing acts of trespass is not sufficient.' And in the leading case of Bonaparte v. Camden and AmboyRailroad Co., Bald. C.C. 205, 217, the cautionary words of Judge Baldwin are equally emphatic against a too frequent resort to this writ. He says: `There is no power, the exercise of which is more delicate, which requires greater caution, deliberation and sound discretion, and which is more dangerous in a doubtful case, than the issuing of an injunction. It is the strong arm of equity that never ought to be extended unless in cases of great injury, where the courts of law cannot afford an adequate or commensurate remedy in damages.'"
Also in Allman v. United Brotherhood of Carpenters, c.,79 N.J. Eq. 150; 81 Atl. Rep. 116, where the court said: *Page 324 
"It is perfectly well settled that whenever the complainant's case is doubtful on the law or the facts a preliminary injunction will not issue. To doubt is to deny. To justify the issuing of an interlocutory injunction the case made by the complainant must exhibit a right free from doubt or reasonable dispute. Roberts
v. Scull, 58 N.J. Eq. (13 Dick.) 396."
In Elevator Supplies Co. v. Wylde, 106 N.J. Eq. 163;150 Atl. Rep. 347, the court said:
"Courts do not ordinarily grant in limine by means of preliminary injunctions the full measure of relief to which a complainant may be entitled on final hearing. It has been repeatedly held that a preliminary injunction should not be awarded except from the pressure of urgent necessity, and the injury to be prevented pendente lite be irreparable. Neither of such requisites are now apparent."
There is here absent such imposing and persuasive proof that the complainants are entitled to the relief for which they pray, free from doubt or reasonable dispute, as would justify this court in appointing a custodial receiver and granting a preliminary restraint, and there is absent as well any proof of such urgent necessity to prevent impending irreparable injury as to necessitate the appointment of such a receiver.
The application is denied.